OPINION OF THE COURT
 

 Levine, J.
 

 In April 1993, plaintiffs David Shumsky and Marjorie Scheiber retained defendant Paul Eisenstein, an attorney, for the specific purpose of commencing an action against Charles Fleischer, a home inspector, for breach of contract. Defendant did not contact plaintiffs to keep them informed and, in fact, avoided plaintiffs’ inquiries regarding the status of the matter.
 

 In response to a formal disciplinary grievance plaintiffs filed against him in September of 1997, defendant admitted that he had failed to commence the action against Fleischer before the Statute of Limitations had expired in March of 1994 and stated that, after two years, when his clients finally contacted him, he was “too embarrassed to discuss the matter and put it off.”
 
 *
 
 Thereafter, on December 5, 1997, plaintiffs commenced this legal malpractice action against defendant, sounding in both contract and tort. Defendant moved for summary judgment
 
 *166
 
 dismissing the complaint on the ground that plaintiffs’ action was barred by the three-year Statute of Limitations, since the malpractice occurred in March 1994 when defendant failed to commence the action against Fleischer. Supreme Court denied defendant’s motion, concluding that the continuous representation doctrine tolled the limitations period at least until defendant finally revealed, in 1997, that he had failed to timely commence plaintiffs’ action against the home inspector.
 

 The Appellate Division reversed, granted defendant’s motion and dismissed the complaint. The court held that, on these facts, the doctrine of continuous representation was not applicable to toll the limitations period. Because plaintiffs’ contract action was never commenced and defendant “ ‘did nothing to foster the impression or to lull [the] plaintiff into believing that the action [against Fleischer] was proceeding,’ ” the Appellate Division held that defendant was not representing plaintiffs in their contract action against Fleischer (270 AD2d 245, 246 [quoting
 
 Muller v Sturman,
 
 79 AD2d 482, 486] [brackets in original]). We granted leave to appeal and now reverse.
 

 An action to recover damages for legal malpractice accrues when the malpractice is committed
 
 (see, Glamm v Allen,
 
 57 NY2d 87, 93). “What is important is when the malpractice was committed, not when the client discovered it”
 
 (id.,
 
 at 95). Here, plaintiffs’ legal malpractice cause of action against defendant accrued in March of 1994, when the Statute of Limitations had expired on the underlying breach of contract action plaintiffs retained defendant to commence.
 

 Effective September 4, 1996, CPLR 214 (6) was amended, shortening the limitations period in nonmedical malpractice claims from six to three years to the extent that the claims sought breach-of-contract damages, and directing that a uniform limitations period applied “regardless of whether the underlying theory is based in contract or tort” (CPLR 214 [6], as amended by L 1996, ch 623). At the time plaintiffs’ legal malpractice action against defendant accrued, however, legal malpractice actions, when based upon a contract theory, were governed by the six-year limitations period applicable to contract actions
 
 (see, Sears, Roebuck & Co. v Enco Assocs.,
 
 43 NY2d 389, 395-396;
 
 Santulli v Englert, Reilly & McHugh,
 
 78 NY2d 700, 707-708).
 

 In
 
 Brothers v Florence
 
 and its companion cases (95 NY2d 290), this Court upheld the application of the 1996 amendment to CPLR 214 (6) to previously accrued claims by affording
 
 *167
 
 litigants a “reasonable opportunity” after the amendment’s effective date to commence an otherwise time-barred action. The Court determined that, for those cases not immediately time-barred as of the 1996 amendment’s effective date, litigants would have “no less than one year from the amendment’s effective date to bring suit”
 
 (Brothers [Early v Rossback], supra,
 
 95 NY2d, at 306). Further, where nonmedical malpractice plaintiffs would have more than one year left to commence an action under the newly amended Statute of Limitations, those plaintiffs were entitled to the full time remaining under the three-year limitations period
 
 (see, id.,
 
 at 306 n).
 

 Like the action at issue in
 
 Early v Rossback,
 
 plaintiffs’ action here was not immediately time-barred upon the 1996 amendment’s effective date. Instead, there were still six months remaining in which to bring suit against defendant for his failure to commence plaintiffs’ breach of contract claim against Fleischer. Thus, under the bright-line rule articulated by this Court in
 
 Brothers v Florence
 
 and its companion cases, the limitations period did not expire until September 4, 1997, one year from the effective date of the 1996 amendment. Because plaintiffs did not commence this action until December 5, 1997, just over three months later, plaintiffs’ action is time-barred unless the continuous representation doctrine is available and applies to these facts.
 

 The continuous representation doctrine, like the continuous treatment rule, its counterpart with respect to medical malpractice claims, “recognizes that a person seeking professional assistance has a right to repose confidence in the professional’s ability and good faith, and realistically cannot be expected to question and assess the techniques employed or the manner in which the services are rendered”
 
 (Greene v Greene,
 
 56 NY2d 86, 94). The doctrine also appreciates the client’s dilemma if required to sue the attorney while the latter’s representation on the matter at issue is ongoing:
 

 “Neither is a person expected to jeopardize his pending case or his relationship with the attorney handling that case during the period that the attorney continues to represent the person. Since it is impossible to envision a situation where commencing a malpractice suit would not affect the professional relationship, the rule of continuous representation tolls the running of the Statute of Limitations on the malpractice claim until the
 
 *168
 
 ongoing representation is completed”
 
 (Glamm v Allen, supra,
 
 57 NY2d, at 94).
 

 Application of the continuous representation or treatment doctrine is nonetheless generally limited to the course of representation concerning a specific legal matter or of treatment of a specific ailment or complaint; “[t]he concern, of course, is whether there has been continuous treatment, and not merely a continuing relation between physician and patient”
 
 (McDermott v Torre,
 
 56 NY2d 399, 405). Thus, the doctrine is not applicable to a client’s or patient’s continuing general relationship with a lawyer or physician involving only routine contact for miscellaneous legal representation or medical care, unrelated to the matter upon which the allegations of malpractice are predicated
 
 (see, Young v New York City Health & Hosps. Corp.,
 
 91 NY2d 291, 296;
 
 Nykorchuck v Henriques,
 
 78 NY2d 255;
 
 Glamm v Allen, supra, 57
 
 NY2d, at 94). Instead, in the context of a legal malpractice action, the continuous representation doctrine tolls the Statute of Limitations only where the continuing representation pertains specifically to the matter in which the attorney committed the alleged malpractice
 
 (see, Glamm, supra,
 
 at 94;
 
 see also, Weiss v Manfredi,
 
 83 NY2d 974, 977).
 

 While it is true that this Court and others have held that a professional’s failure to take action or provide services necessary to protect a client’s or patient’s interests does not, standing alone, constitute representation or treatment for purposes of tolling the Statute of Limitations
 
 (see, e.g., Young v New York City Health & Hosps. Corp., supra,
 
 91 NY2d, at 296-297;
 
 Ashmead v Groper,
 
 251 AD2d 716), we reject defendant’s contention, and the Appellate Division’s conclusion, that the instant matter falls within that category of cases. The court below relied on
 
 Ashmead v Groper (supra),
 
 a case in which the plaintiff retained the defendant attorney in 1981 to represent him in his pursuit of workers’ compensation benefits. Shortly after the attorney had been retained, the plaintiff received an award based upon an established average weekly wage and, in May of 1984, the case was closed by the Workers’ Compensation Board. In 1995 the plaintiff commenced a legal malpractice action alleging negligence in establishing plaintiff’s average weekly wage. The timeliness of that action turned on whether the continuous representation doctrine tolled the applicable limitations period from May of 1984 until September 1992, when plaintiff had obtained another lawyer. In concluding that the doctrine did not apply to toll the limitations pe
 
 *169
 
 riod, the Appellate Division noted that because “plaintiff was unaware of the need for any further legal services in connection with his workers’ compensation claim, he was not faced with the dilemma that gave rise to the continuous treatment/ representation doctrine”
 
 (id.,
 
 at 717 [citing
 
 Young v New York City Health & Hosps. Corp.,
 
 91 NY2d 291,
 
 supra]).
 

 Similarly,
 
 Young v New York City Health & Hosps. Corp. (supra)
 
 involved a malpractice suit alleging failure to timely diagnose and treat plaintiff’s breast cancer. There, a mammogram report had recommended a biopsy to rule out any malignancy but that recommendation was never communicated to plaintiff, even upon her return visits for treatment of an unrelated condition. Looking to the underlying purpose behind the continuous treatment doctrine — to avoid undermining the continuing trust developing between a professional and his or her client or patient — this Court determined that the doctrine was not applicable in the absence of contemplated subsequent treatment because “a patient who is not aware of the need for further treatment of a condition is not faced with the dilemma that the doctrine is designed to prevent”
 
 (Young, supra,
 
 91 NY2d, at 296 [citing
 
 Allende v New York City Health & Hosps. Corp.,
 
 90 NY2d 333, 337-338;
 
 Rizk v Cohen,
 
 73 NY2d 98, 104]). Even in
 
 Young,
 
 however, this Court did recognize that treatment does not “necessarily terminate upon a patient’s last visit if further care or monitoring of the condition is ‘explicitly anticipated by both physician and patient’”
 
 (id.,
 
 at 296 [quoting
 
 Richardson v Orentreich,
 
 64 NY2d 896, 898]).
 

 This case is distinguishable from both
 
 Ashmead
 
 and
 
 Young.
 
 In those cases, the plaintiffs were unaware of any need for further legal services or medical treatment, and there was no mutual understanding with the professional that further services were needed in connection with the specific subject matter out of which the malpractice arose. By contrast, plaintiffs here were acutely aware of such need for further representation on the specific subject matter underlying the malpractice claim and there was a mutual understanding to that effect. Moreover, the record indisputably established that plaintiffs were left with the reasonable impression that defendant was, in fact, actively addressing their legal needs. Thus, this case is most analogous to, and controlled by, this Court’s decisions in both
 
 Richardson v Orentreich (supra)
 
 and the earlier decided
 
 McDermott v Torre
 
 (56 NY2d 399,
 
 supra).
 

 In
 
 McDermott v Torre (supra),
 
 this Court held that the continuous treatment doctrine would apply to toll the limita-
 

 
 *170
 
 tions period where, after the alleged malpractice had occurred, the plaintiff had returned to the defendant doctor seeking not only medical attention for unrelated ailments, but also to complain about continued pain related to the very condition giving rise to the malpractice claim. The Court noted that even a complete discharge of a patient by a physician did not necessarily preclude a finding of continuing treatment because “[i]ncluded within the scope of ‘continuous treatment’ is a timely r turn visit instigated by the patient to complain about and seek treatment for a matter related to the initial treatment”
 
 (id.,
 
 at 406). In
 
 Richardson (supra),
 
 this Court adhered to that rule, concluding that “where the physician and patient reasonably intend the patient’s uninterrupted reliance upon the physician’s observation, directions, concern, and responsibility for overseeing the patient’s progress, the requirement for continuous care and treatment for the purpose of the Statute of Limitations is certainly satisfied”
 
 (supra,
 
 64 NY2d, at 899).
 

 By a parity of reasoning, “continuous representation” in the context of a legal malpractice action does not automatically come to an end where, as here, pursuant to a retainer agreement, an attorney and client both explicitly anticipate continued representation. Plaintiffs retained defendant for the sole purpose of pursuing their specific contract claim. Thus, upon signing the retainer agreement, plaintiffs and the defendant reasonably intended that their professional relationship of trust and confidence — focused entirely upon the very matter in which the alleged malpractice was committed — would continue. Indeed, even in his letter to the Grievance Committee, defendant acknowledged that his services had been retained specifically to “investigate, research and
 
 prosecute
 
 their claim against Fleischer” — the equivalent of a “course of treatment” in the legal malpractice context. Moreover, like the “timely return visit instigated by the patient” in
 
 McDermott,
 
 plaintiffs’ attempt to contact defendant on at least one occasion, in October of 1996, inquiring about the status of their case and requesting a letter in response, confirms this understanding and supports application of the doctrine here. Accordingly, this case appears to fall well within that realm of
 
 continuous
 
 professional services already recognized by this Court in the medical malpractice context.
 

 Of course, even when further representation concerning the specific matter in which the attorney allegedly committed the complained of malpractice is needed and contemplated by the client, the continuous representation toll would nonetheless
 
 *171
 
 end once the client is informed or otherwise put on notice of the attorney’s withdrawal from representation. Here, at the earliest, plaintiffs may have received reasonable notice of defendant’s withdrawal from representation upon defendant’s interminable failure to respond to their telephone inquiries of October 18, 1996. We thus conclude that, on these facts, defendant was continuously representing plaintiffs at least until, after his extended failure to return their telephone inquiries of October 1996, they may have been put on sufficient notice that the representation had ceased. Even calculating the limitations period from that time, this action, brought just under 14 months from that date, was still timely.
 

 Accordingly, the order of the Appellate Division should be reversed, with costs, and defendant’s motion for summary judgment denied.
 

 Chief Judge Kaye and Judges Smith, Ciparick, Wesley, Rosenblatt and Graffeo concur.
 

 Order reversed, etc.
 

 *
 

 In September 1998, the Grievance Committee for the Tenth Judicial District concluded that defendant’s actions constituted a breach of the Code of Professional Responsibility and issued a Letter of Admonition to the attorney.