[872 NE2d 842, 840 NYS2d 730]

Richard A. Williamson, as Successor Liquidating Trustee on Behalf of Lipper Convertibles, L.P., and Lipper Fixed Income Fund, L.P., Respondent, v PricewaterhouseCoopers LLP, Appellant.

Argued April 25, 2007; decided June 7, 2007

**POINTS OF COUNSEL**

*Orrick, Herrington & Sutcliffe LLP,* New York City (*J. Peter Coll, Jr., Sherene D. Hannon* and *Thomas H. Godwin* of counsel), and *Andrew J. Plunkett* for appellant. I. The First Department decision should be reversed because Pricewater-houseCoopers LLP's consecutive annual audits do not amount to continuous representation which would toll the statute of limitations. (*Borgia v City of New York,* 12 NY2d 151; *Shumsky v Eisenstein,* 96 NY2d 164; *Glamm v Allen,* 57 NY2d 87; *Greene v Greene,* 56 NY2d 86; *Gordon v Magun,* 83 NY2d 881; *Young v*

*New York City Health & Hosps. Corp.,* 91 NY2d 291; *Nykorchuck v Henriques,* 78 NY2d 255; *Massie v Crawford,* 78 NY2d 516; *Charalambakis v City of New York,* 46 NY2d 785; *Davis v City of New York,* 38 NY2d 257.) II. The First Department decision eviscerates the applicable three-year statute of limitations period. (*Chase Scientific Research v NIA Group,* 96 NY2d 20; *Santulli v Englert, Reilly & McHugh,* 78 NY2d 700; *Ackerman v Price Waterhouse,* 84 NY2d 535; *McCoy v Feinman,* 99 NY2d 295.)

*Labaton Sucharow & Rudoff LLP,* New York City (*Thomas A. Dubbs, Lisa Buckser-Schulz, Barry Michael Okun* and *Craig A. Martin* of counsel), for respondent. I. The First Department's decision that the applicability of the "continuous representation" doctrine to a series of audits is a question of fact that cannot be determined prior to the development of a full factual record should be affirmed. (*Borgia v City of New York,* 12 NY2d 151; *Ackerman v Price Waterhouse,* 252 AD2d 179; *Zwecker v Kulberg,* 209 AD2d 514; *Hall & Co. v Steiner & Mondore,* 147 AD2d 225; *Kearney v Firley, Moran, Freer & Eassa,* 234 AD2d 967; *Shumsky v Eisenstein,* 96 NY2d 164; *Greene v Greene,* 56 NY2d 86; *Muller v Sturman,* 79 AD2d 482; *McDermott v Torre,* 56 NY2d 399; *Young v New York City Health & Hosps. Corp.,* 91 NY2d 291.) II. The First Department correctly held that the "continuous representation" doctrine and its applicability create questions of fact. (*A.J. Temple Marble & Tile v Union Carbide Marble Care,* 87 NY2d 574; *Greene v Greene,* 56 NY2d 86; *McDermott v Torre,* 56 NY2d 399; *Shumsky v Eisenstein,* 96 NY2d 164; *Hall & Co. v Steiner & Mondore,* 147 AD2d 225; *Young v New York City Health & Hosps. Corp.,* 91 NY2d 291; *McCoy v Feinman,* 99 NY2d 295; *Nykorchuck v Henriques,* 78 NY2d 255; *Massie v Crawford,* 78 NY2d 516; *Gordon v Magun,* 83 NY2d 881.)

*Willkie Farr & Gallagher LLP,* New York City (*Kelly M. Hnatt* and *Matthew P. Bosher* of counsel), and *Richard I. Miller* for American Institute of Certified Public Accountants and another, amici curiae. I. The relationship between an independent auditor and its client is not susceptible to application of the continuous representation doctrine. (*Borgia v City of New York,* 12 NY2d 151; *Young v New York City Health & Hosps. Corp.,* 91 NY2d 291; *Nykorchuck v Henriques,* 78 NY2d 255; *Rizk v Cohen,* 73 NY2d 98; *Greene v Greene,* 56 NY2d 86; *Glamm v Allen,* 57 NY2d 87; *Reuben H. Donnelley Corp. v Mark I Mktg. Corp.,* 893 F Supp 285; *Shumsky v Eisenstein,* 96 NY2d 164; *Massie v*

*Crawford,* 78 NY2d 516; *Davis v City of New York,* 38 NY2d 257.) II. Public policy militates against subjecting auditors to an indeterminate limitations period. (*United States v Marion,* 404 US 307; *Duffy v Horton Mem. Hosp.,* 66 NY2d 473; *Connell v Hayden,* 83 AD2d 30; *Ehrlich-Bober & Co. v University of Houston,* 49 NY2d 574; *Brothers v Florence,* 95 NY2d 290; *Ultramares Corp. v Touche,* 255 NY 170.)

*Wilentz, Goldman & Spitzer, P.A.,* Woodbridge, New Jersey (*Kevin P. Roddy* of counsel), for National Association of Shareholder and Consumer Attorneys, amicus curiae. I. The investing public places great reliance on audits. (*United States v Arthur Young & Co.,* 465 US 805.) II. The market expects continuous long-term relationships between companies and their auditors. III. Continuous use of the same auditors, while in some ways conducive to audit quality, can lead to mistakes, and then permit them to be repeated year after year.

*Berman DeValerio Pease Tabacco Burt & Pucillo,* Boston, Massachusetts and San Francisco, California (*Joseph J. Tabacco, Jr.,* and *Nicole Lavallee* of counsel), for Professor Ross Fuerman, amicus curiae. The contention that auditors would be subjected to unlimited liability if the continuous representation doctrine were applied to them is simply false.

**OPINION OF THE COURT**

JONES, J.

We are asked to determine whether the continuous representation doctrine applies to toll the limitations period applicable to plaintiff's auditing malpractice claims against defendant. In the circumstances presented, we conclude that it does not.

## Facts and Procedural History

Lipper Convertibles and Lipper Fixed Income Fund (collectively, the Funds) were private investment limited partnerships (hedge funds) managed by Lipper Holdings (Management). Lipper Convertibles' primary asset was a portfolio of convertible securities. Lipper Fixed Income invested approximately 60% of its assets in Lipper Convertibles.

Beginning in or around 1990, the Funds annually engaged defendant to perform a number of accounting services with respect to the previous fiscal year, including an audit of and

opinion on each Fund's year-end financial statements.[1] Management was responsible for preparing the financial statements in accordance with generally accepted accounting principles (GAAP) and representing that the statements were devoid of fraud and free of material misstatement. Defendant was responsible for performing audits on the financial statements pursuant to generally accepted auditing standards (GAAS). Defendant performed the audits by referring to the worksheets it prepared for the prior year's audits; examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements; assessing the accounting principles used and significant estimates made by Management; and evaluating the overall financial statement presentation.

After completing its inspection of the financial statements, defendant issued unqualified opinions for the year audited, stating that the financial statements fairly represented the financial position of the Funds on December 31st of the subject year. Once the annual audit services for a particular fiscal year were complete, defendant did no further work as to that year. On February 26 and March 12, 2001, defendant issued the audit opinions on the year-end 2000 financial statements of Lipper Convertibles and Lipper Fixed Income, respectively. The 2000 audits were the last audits defendant completed on behalf of the Funds.

On January 14, 2002, two key officers of Lipper Convertibles— the comanager of the portfolio and its head of research— unexpectedly resigned in order to start their own hedge fund. In or around February 2002, Management conducted a review of the values it had placed on Lipper Convertibles' securities as of December 31, 2001 and discovered that the former portfolio manager had used an improper valuation method which materially overstated the securities holdings. Management further discovered that, due to the former portfolio manager's overstatement of Lipper Convertibles' securities holdings, the Funds reported increasingly inflated assets, capital and profits in their respective financial statements for the years 1995 through 2000.

In a letter dated February 20, 2002, Management notified the limited partners of Lipper Convertibles that a write-down in the

---

**1.** As part of each engagement and incident to each specific audit, defendant was required to render an opinion as to whether Lipper Convertibles' internal control structure conformed with rule 17a-5 (17 CFR 240.17a-5) promulgated pursuant to the Securities Exchange Act of 1934, and prepare tax returns for the Funds and Schedule K-1's for the Funds' limited partners.

value of the Fund's portfolio of convertible securities, as of December 31, 2001, would result in a 40% (approximately $400 million) decline in the Fund's net equity value. After this announcement, many limited partners withdrew their investments from the Funds. On March 26, 2002, Management notified the limited partners that it was dissolving the Funds and began the winding up process. As part of this process, Management, the liquidating trustee of the Funds, liquidated all securities held by the Funds. By petition dated October 3, 2002, Management commenced a proceeding to wind up the Funds in Supreme Court. On July 1, 2003, the court appointed plaintiff Richard A. Williamson as successor liquidating trustee of the Funds. On December 15, 2003, plaintiff and defendant executed a stipulation and tolling agreement (Tolling Agreement) under which they agreed that "all applicable state or federal statutes of limitations and other time-related defenses as to the Claims are tolled from December 15, 2003 through and including [June 30, 2004]."

On July 2, 2004, more than three years after defendant completed its final audits of the Funds' financial statements and issued its final opinions, plaintiff commenced this action against defendant for malpractice, among other claims, based on defendant's improper audits of the Funds' financial statements for the fiscal years 1995 through 2000. Plaintiff alleged that defendant's services for the Funds incorporated and built upon the services rendered in prior years, and were continuous and performed in the same manner and for the same purpose until early 2002. Regarding the alleged malpractice, plaintiff asserted that: (1) defendant's audits were not conducted in accordance with GAAS; (2) defendant, beginning with its audits of the Funds' 1995 financial statements, ignored blatant errors in the portfolio manager's valuation of Lipper Convertibles' securities holdings and took as its starting point for each year's audit the materially incorrect figures it had certified in the previous year; (3) although defendant was aware of these errors, instead of advising Management, it falsely represented to the Funds' limited partners year after year that the Funds' financial statements fairly represented the value of the portfolios for Lipper Convertibles and Lipper Fixed Income, and that the statements complied with GAAP; and (4) as a result, the Funds reported increasingly inflated assets, capital and profits in their financial statements year after year, with each year's statements relying and building upon the errors of the prior year.

Defendant filed a pre-answer motion to dismiss the complaint, arguing that plaintiff's malpractice claims were time-barred by the three-year statute of limitations applicable to claims of professional malpractice (*see* CPLR 214 [6]).[2] Plaintiff countered that the statute of limitations should be tolled under the "continuous representation" doctrine because each audit was one step in the continuous and interrelated service defendant provided to the Funds over a 12-year period (from 1990 until it was discharged in February 2002).

Supreme Court granted defendant's motion to dismiss, in part, holding that plaintiff's malpractice claims were time-barred (*see* CPLR 203 [a]). The court stated: "[T]he annual audits form the only basis for plaintiff's claims. Taken together, plaintiff's claims underscore that the audits [defendant] performed constituted the continuation of a general professional relationship. Those audits are insufficient to toll the statute of limitations under the continuous representation doctrine" (2005 NY Slip Op 30084[U], at *13).

The Appellate Division reversed, with two Justices dissenting (32 AD3d 179 [2006]). The majority reinstated the malpractice claims and held that Supreme Court "should have given plaintiff the opportunity to develop through discovery, and to establish, the asserted fact that each audit was merely a step in a continuous and interrelated service that [defendant] provided through the years in question" (*id.* at 181). The dissenting Justices concluded that, "[i]nasmuch as these were discrete audits conducted on a year-to-year basis, the continuous representation doctrine does not apply to alter the accrual date of these causes of action" (*id.* at 185). The Appellate Division granted defendant leave to appeal and certified the following question: "Was the order of this Court, which reversed the order of the Supreme Court, properly made?" For the reasons that follow, we answer the certified question in the negative, reverse and reinstate the order of Supreme Court.

## Discussion

An action for professional malpractice must be commenced within three years of the date of accrual (*see* CPLR 214 [6]). A claim accrues when the malpractice is committed, not when the

---

**2.** During oral argument on this motion, defendant acknowledged that plaintiff's malpractice claims based on the 2000 audits were timely under the Tolling Agreement. Thus, defendant only moved on the claims based on the years 1995 through 1999.

client discovers it (*see e.g. Glamm v Allen*, 57 NY2d 87, 93 [1982], citing *McDermott v Torre*, 56 NY2d 399 [1982]).

In *Ackerman v Price Waterhouse* (84 NY2d 535 [1994]), a case involving an accounting partnership's alleged negligence and professional malpractice in the preparation of annual tax returns, we held that an accounting malpractice claim "accrues upon the client's receipt of the accountant's work product since this is the point that a client reasonably relies on the accountant's skill and advice" (*id.* at 541). This is the point "when all the facts necessary to the cause of action have occurred and an injured party can obtain relief in court" (*id.*). Here, plaintiff's malpractice claims for the 1995 through 1999 audits accrued on the date the Funds received defendant's audit opinions (i.e., in February or March 1996, 1997, 1998, 1999 and 2000). The limitations period for the claim regarding the 1999 audits ran in March 2003. Because this action was not commenced until July 2, 2004, more than a year later, plaintiff's malpractice claims for the years ending 1995 through 1999 are time-barred unless the "continuous representation" doctrine applies.

This case presents our first opportunity to determine the applicability of the continuous representation doctrine in an accounting context. In making this determination, we are guided, in part, by our "continuous treatment" jurisprudence.

The continuous treatment doctrine was first recognized in medical malpractice cases (*see Borgia v City of New York*, 12 NY2d 151 [1962]), and is codified in CPLR 214-a. The statute provides that an action for medical malpractice must be commenced within $2^{1}/_{2}$ years from the date of the "act, omission or failure complained of or last treatment where there is continuous treatment for the same illness, injury or condition which gave rise to the said act, omission or failure" (CPLR 214-a). Thus, under the continuous treatment doctrine, "when the course of treatment which includes the wrongful acts or omissions has run continuously and is related to the same original condition or complaint," the limitations period does not begin to run until the end of the treatment (*Borgia*, 12 NY2d at 155). A patient's "treatment," for purposes of the doctrine, "does not necessarily terminate upon a patient's last visit if further care or monitoring of the condition is 'explicitly anticipated by both physician and patient' " (*Young v New York City Health & Hosps. Corp.*, 91 NY2d 291, 296 [1998], quoting *Richardson v Orentreich*, 64 NY2d 896, 898 [1985]).

The rule of "continuous treatment" does not apply to a continuing general relationship between patient and physician or to situations where the patient initiates routine, periodic examinations to check a condition (*see Massie v Crawford*, 78 NY2d 516, 519 [1991]; *McDermott*, 56 NY2d at 406). Similarly, a physician's failure to take action or provide services in order to protect a patient's interests, does not, standing alone, constitute treatment for purposes of tolling the limitations period (*see e.g. Young*, 91 NY2d at 296-297).

The doctrine developed out of the concern that a malpractice cause of action might expire while the plaintiff "was still a patient receiving care and treatment related to the conditions produced by the earlier wrongful acts and omissions" (*Borgia*, 12 NY2d at 156). Put another way, the toll "enforce[s] the view that a patient should not be required to interrupt corrective medical treatment by a physician and undermine the continuing trust in the physician-patient relationship in order to ensure the timeliness of a medical malpractice action" (*Young*, 91 NY2d at 296, citing *Rizk v Cohen*, 73 NY2d 98, 104 [1989]; *see Borgia*, 12 NY2d at 156). Thus, "a patient who is not aware of the need for further treatment of a condition is not faced with the dilemma that the doctrine is designed to prevent" (*Young*, 91 NY2d at 296).

The rule of continuous treatment, or more appropriately continuous representation, applies to other types of professionals, such as lawyers (*see Greene v Greene*, 56 NY2d 86, 94 [1982]; *Glamm*, 57 NY2d at 93). The continuous representation and treatment doctrines " 'recognize[ ] that a person seeking professional assistance has a right to repose confidence in the professional's ability and good faith, and realistically cannot be expected to question and assess the techniques employed or the manner in which the services are rendered' " (*Shumsky v Eisenstein*, 96 NY2d 164, 167 [2001], quoting *Greene*, 56 NY2d at 94).

Contrary to plaintiff's suggestion, the basic principles that inform the continuous treatment doctrine apply to the rule of continuous representation (*see e.g. Shumsky*, 96 NY2d at 167-168 [using the continuous treatment and representation doctrines interchangeably when discussing their common, underlying rules]; *compare Zorn v Gilbert*, 8 NY3d 933, 934 [2007] *and McCoy v Feinman*, 99 NY2d 295, 306 [2002] [holding that the "continuous representation doctrine tolls the statute of limitations . . . where there is a mutual understanding of the need for further representation on the specific subject matter

underlying the malpractice claim"] *with Young*, 91 NY2d at 296 [holding that the continuous treatment doctrine tolls the limitations period if further care or monitoring of the condition is explicitly anticipated by both physician and patient]). We do, however, agree with plaintiff that *Shumsky* is instructive in resolving the issue before us.

In *Shumsky*, defendant attorney, who was retained by plaintiffs for the express purpose of investigating, researching and *prosecuting* a breach of contract action against a third party, failed to commence the suit before the statute of limitations expired. He also never responded to plaintiffs' inquiries regarding the status of the case. Eventually, plaintiffs brought a legal malpractice action against defendant; however, as the limitations period had expired, the suit was time-barred unless saved by application of the continuous representation doctrine. This Court held that where (1) plaintiffs and defendant attorney were acutely aware of the need for further representation against the third party (i.e., they had a mutual understanding to that effect), and (2) plaintiffs were under the impression that defendant attorney was actively addressing their legal needs, the continuous representation doctrine tolled the limitations period for plaintiffs' malpractice claim until plaintiffs were put on notice by defendant's failure to return calls that he withdrew from representing them (*see Shumsky*, 96 NY2d at 170-171). In so holding, we noted that ''upon signing the retainer agreement, [which essentially established a 'course of representation' for continuous representation purposes,] plaintiffs and the defendant reasonably intended that their professional relationship . . . would continue'' (*id.* at 170); and ''plaintiffs' attempt to contact defendant . . . about the status of their case and requesting a letter in response, confirm[ed] this understanding'' (*id.*). *Shumsky*, therefore, emphasizes that the nature and scope of the parties' retainer agreement (engagement) play a key role in determining whether ''continuous representation'' was contemplated by the parties.

Applying the foregoing principles, and accepting, as we must, the facts as alleged by plaintiff on this motion to dismiss, we conclude that the continuous representation doctrine is not available to toll the statute of limitations here.

Plaintiff's allegations make clear that for the years in question, the Funds entered into annual engagements with defendant for the provision of separate and discrete audit services for the Funds' year-end financial statements, and once defendant

performed the services for a particular year, no further work as to that year was undertaken. Taken together, plaintiff's allegations establish defendant's failures within a continuing professional relationship, not a course of representation as to the particular problems (conditions) that gave rise to plaintiff's malpractice claims. Plaintiff fails to allege that defendant and the Funds explicitly contemplated further representation regarding the audits. Specifically, the Funds never engaged defendant to provide corrective or remedial services (e.g., to reexamine a prior year's financial statements or redo a prior year's audit). Nor were the Funds aware of the need for further representation as to the audits. Thus, the "mutual understanding" required under the doctrine did not exist.

Given the Funds' lack of awareness of a condition or problem warranting further representation and the fact that no course of representation was alleged, the purpose underlying the continuous representation doctrine would not be served by its application here. Thus, Supreme Court properly granted defendant's motion to dismiss with respect to the malpractice claims for audits conducted from 1995 through 1999.

Accordingly, the order of the Appellate Division should be reversed, with costs, the order of Supreme Court reinstated, and the certified question answered in the negative.

Chief Judge KAYE and Judges CIPARICK, GRAFFEO, READ, SMITH and PIGOTT concur.

Order reversed, etc.