[886 NYS2d 368]

J. Virgil Waggoner et al., Appellants, v Kenneth A. Caruso et al., Respondents.

First Department, September 29, 2009

## APPEARANCES OF COUNSEL

*W. Asa Hutchinson,* Rogers, Arkansas, of the Arkansas bar, admitted pro hac vice, *Helms & Greene, LLC,* New York City (*James J. Mahon* of counsel), and *Christopher S. Rooney,* New York City, for appellants.

*Paterson Belknap Webb & Tyler LLP,* New York City (*Frederick B. Warder III* and *Rosanne E. Felicello* of counsel), for Kenneth A. Caruso, respondent.

*Bracewell & Giuliani LLP,* New York City (*Daniel S. Connolly* and *Michael Kuhn* of counsel), for Bracewell & Giuliani LLP, respondent.

*Chadbourne & Parke LLP,* New York City (*Thomas J. Hall and Eric Przybylko* of counsel), for Chadbourne & Parke LLP, respondent.

*Pillsbury Winthrop Shaw Pittman LLP,* New York City (*David G. Keyko, E. Leo Milonas* and *Ryan G. Kriger* of counsel), for Pillsbury Winthrop Shaw Pittman LLP, respondent.

### OPINION OF THE COURT

DeGrasse, J.

The issues on this appeal involve the facial sufficiency of a legal malpractice complaint as well as the applicability of the continuous representation doctrine. The following allegations are set forth in the amended verified complaint. Beginning in 1996, plaintiff Waggoner was lured by Lisa Duperier, an acquaintance, into investing $10 million in a supposed high-yield investment program (HYIP). Duperier persuaded Waggoner to utilize the services of Donal Kelleher, a financial advisor. In 1997, Waggoner, with Kelleher as a trustee, placed $10 million into an escrow account pending the location of an HYIP. In May and June 1998, Kelleher and Duperier began discussing the investment with representatives of British Trade and Commerce Bank (BTCB), an HYIP administrator. In order to effectuate the investment, Waggoner organized plaintiff J.V.W. Investment at the suggestion of Charles L. Brazie, BTCB's vice-president of managed accounts. Accordingly, in June 1998, J.V.W. and BTCB entered into a cooperative venture agreement by

which BTCB was to administer the investment program into which Waggoner was to place his money. On BTCB's instructions, Kelleher deposited Waggoner's $10 million into a purported BTCB sub-account maintained by Suisse Security Bank and Trust (SSBT) at Citibank. A certificate of deposit (CD) was supposedly issued upon the investment of the $10 million into the HYIP. However, the account was a freestanding SSBT account rather than a BTCB sub-account. Waggoner's money was immediately stolen upon deposit at Citibank. BTCB laundered a portion of the funds through its account at First Equity Corporation of Florida (FECF) among others.

On October 7, 1998, Waggoner retained defendant Caruso, and the defendant Pillsbury firm's predecessor (Caruso's then law firm), Shaw Pittman Potts & Trowbridge, to trace SSBT's assets and recover any amounts due and owing to J.V.W. Shortly thereafter, Caruso allegedly ignored information from Kelleher as to the location of attachable assets of SSBT and BTCB. On August 16, 1999, Correspondent Services Corporation, a clearing broker, commenced an interpleader action in the United States District Court for the Southern District of New York with respect to competing claims to the aforementioned CD. Plaintiffs herein, Kelleher and FECF (the holder of the CD) were named as defendants. Through Caruso, their attorney, plaintiffs filed a cross claim against SSBT and attached its property to the extent of $3 million. Caruso requested that Waggoner sign an affidavit stating that he had recovered approximately $7.7 million of the $10 million. Waggoner signed the affidavit although he now asserts that the $7.7 million was not recovered. The $3 million attachment represents the unrecovered $2.3 million plus interest. The subject CD expired and its funds were moved to another CD. Accordingly, the District Court dismissed the interpleader action for lack of subject matter jurisdiction inasmuch as the CD had no value (see Correspondent Servs. Corp. v JVW Inv., Ltd., 2004 WL 2181087, 2004 US Dist LEXIS 19341 [SD NY 2004], affd sub nom. Correspondent Servs. Corp. v First Equities Corp. of Fla., 442 F3d 767 [2d Cir 2006], cert denied sub nom. Waggoner v Suisse Sec. Bank & Trust, Ltd., 549 US 1209 [2007]). The District Court also ordered Waggoner to pay SSBT's attorneys' fees pursuant to CPLR 6212 (e) upon making a finding that Waggoner had wrongfully attached SSBT's property.

In February 2001, the U.S. Senate Subcommittee on Investigations issued the "Minority Staff of the Permanent Subcommit-

tee on Investigations Report on Correspondent Banking: A Gateway for Money Laundering," detailing a number of financial frauds involving BTCB, including the transfer of plaintiffs' funds from the escrow account to a Swiss account (available at http://hsgac.senate.gov/psi_finalreport.pdf). The report implicates Brazie in the investment scheme. In November 2001, Rodolfo Requena, BTCB's chairman and the president of BTC Financial Services, the parent company of FECF, pleaded guilty to federal money laundering charges in the United States District Court for the Southern District of Florida. Plaintiffs allege that Caruso agreed to represent Requena but never disclosed that discussion to them. According to the complaint, Caruso, the Pillsbury firm and defendant Chadbourne & Parke did not advise Waggoner of any wrongdoing on the part of BTCB despite these damaging revelations. In February 2001, BTCB's license was revoked and it entered liquidation. SSBT's license was revoked the following month.

In November 2001, Caruso and his practice group left Pillsbury and began practicing at Chadbourne. In January 2002, Chadbourne replaced Pillsbury as plaintiffs' counsel in the federal action. Caruso left Chadbourne and joined defendant Bracewell & Giuliani as a partner in May 2005. Bracewell, in turn, replaced Chadbourne in the federal litigation, and continued to represent plaintiffs until discharged in May 2006. This action against Caruso, Bracewell, Chadbourne and Pillsbury was commenced in July 2007. The claims set forth in the amended complaint sound in legal malpractice, breach of fiduciary duty, fraud and conspiracy to commit fraud. Plaintiffs based their malpractice claim upon defendants' alleged failure to "timely and properly investigate and institute . . . recovery actions against SSBT and/or BTCB" before 2001 when these institutions entered liquidation.

A cause of action for legal malpractice cannot be stated in the absence of an attorney-client relationship (*Baystone Equities, Inc. v Handel-Harbour*, 27 AD3d 231 [2006]). Accordingly, the legal malpractice claims against Chadbourne and Bracewell are not viable inasmuch as they were not plaintiffs' attorneys when the recovery and attachment remedies were purportedly available. Moreover, the legal malpractice cause of action was properly dismissed as to all defendants because plaintiffs have not demonstrated that they would have prevailed in any underlying proceeding but for defendants' alleged negligence (*Davis v Klein*, 88 NY2d 1008 [1996]).

6

■ Plaintiffs based their claim for breach of fiduciary duty upon defendants' nondisclosure of their employment of Duperier and Brazie as consultants, an alleged personal relationship between the two, and Caruso's alleged agreement to represent Requena. Plaintiffs assert that these undisclosed conflicts of interest prevented defendants from pursuing any claims against BTCB, which would have represented plaintiffs' best interests. As such, the claim for breach of fiduciary duty was properly dismissed because it is redundant of the legal malpractice cause of action (*see Sage Realty Corp. v Proskauer Rose*, 251 AD2d 35, 38-39 [1998]).

■■ Plaintiffs based their fraud claim on Caruso's request that Waggoner sign the affidavit stating that $7.7 million of his funds had been recovered, his failure to cooperate with the Senate subcommittee's investigation, defendants' failure to disclose that plaintiffs' $10 million investment was stolen or the fraudulent nature of the HYIPs, their employment of Duperier and Brazie and their failure to disclose their own malpractice. The circumstances of a fraud claim must be stated in detail (CPLR 3016 [b]). In order to state such a cause of action, a plaintiff must allege misrepresentation or concealment of a material fact, falsity, scienter by the wrongdoer, justifiable reliance on the deception, and resulting injury (*Zanett Lombardier, Ltd. v Maslow*, 29 AD3d 495 [2006]). Here, the fraud claim is not pleaded with the required detail because plaintiffs have failed to allege how they changed their position or otherwise relied upon any purported misrepresentations or omissions to their detriment. The required detail is also lacking with respect to causation because the complaint does not set forth how defendants' conduct caused plaintiffs to lose their $10 million. In addition, the claim of conspiracy to commit fraud is not viable because the State of New York does not recognize an independent cause of action in tort for conspiracy (*Salerno v Pandick, Inc.*, 144 AD2d 307, 308 [1988], citing *Alexander & Alexander of N.Y. v Fritzen*, 68 NY2d 968, 969 [1986]).

■ Although we affirm Supreme Court's order, we do not do so on the ground that plaintiffs' legal malpractice claim against Pillsbury is time-barred. A legal malpractice action must be commenced within three years of accrual (CPLR 214 [6]; 203 [a]). Accrual occurs when the malpractice is committed (*Shumsky v Eisenstein*, 96 NY2d 164, 166 [2001]). In this case, plaintiffs' malpractice claim against Pillsbury accrued nearly six years before this action was commenced. Under the doctrine of

continuous representation, however, the statute of limitations is tolled while representation on the same matter in which the malpractice is alleged is ongoing (*see Glamm v Allen*, 57 NY2d 87 [1982]). The doctrine is rooted in recognition that a client cannot be expected to jeopardize a pending case or relationship with an attorney during the period that the attorney continues to handle the case (*see id.* at 94). In rendering its decision, Supreme Court ruled that the statute of limitations was not tolled as to Pillsbury because it ceased representing plaintiff in January 2002 when Caruso left the firm and took plaintiffs' case with him. In *HNH Intl., Ltd. v Pryor Cashman Sherman & Flynn LLP* (63 AD3d 534 [2009]), this Court has since held that the statute was tolled as to a malpractice claim against a law firm because the attorneys who handled the case continued to represent the plaintiffs in the same matter, albeit at different law firms. Guided by this precedent, we now hold that the statute of limitations was tolled by the doctrine of continuous representation during the time that Caruso represented plaintiffs in the underlying matter while he was a partner at Chadbourne and Bracewell.

Sound policy considerations also support the tolling of the statute of limitations with respect to the legal malpractice claim against Pillsbury. Any suit brought by plaintiffs against Pillsbury would have been based upon Caruso's acts of malpractice. Caruso would have thereby been exposed to Pillsbury's potential claims for contribution or indemnification. As noted by the Court of Appeals in *Glamm,* a person cannot be expected to jeopardize a relationship with the attorney handling his or her case during the period that the attorney continues to represent him (57 NY2d at 94). An attorney-client relationship would certainly be jeopardized by a client's allegation that his or her attorney committed malpractice while representing the client. *Beal Bank, SSB v Arter & Hadden, LLP* (42 Cal 4th 503, 167 P3d 666 [2007]), a case defendants cite, is distinguishable because it involves the interpretation of a California statute that codifies the continuous representation doctrine. New York does not have a similar statute.

Accordingly, the order of Supreme Court, New York County (Bernard J. Fried, J.), entered September 11, 2008, which granted defendants' motion to dismiss the complaint pursuant to CPLR 3211, should be affirmed, with costs.

SAXE, J.P., BUCKLEY and FREEDMAN, JJ., concur.

Order, Supreme Court, New York County, entered September 11, 2008, affirmed, with costs.