◼ OVERSEAS SHIPHOLDING GROUP, INC., Respondent, v PROSKAUER ROSE, LLP, et al., Appellants. [13 NYS3d 39]—

Orders, Supreme Court, New York County (Jeffrey K. Oing, J.), entered September 16 and September 25, 2014, which, to the extent appealed from, denied defendants' motion to dismiss the first cause of action alleging legal malpractice, affirmed, without costs.

The motion court correctly determined that the legal malpractice claim, based on allegedly deficient tax advice provided by defendants beginning in 2005 and continuing throughout the course of its ongoing representation of plaintiff, is not time-barred (*see Shumsky v Eisenstein*, 96 NY2d 164, 168 [2001]; *Ackerman v Price Waterhouse*, 252 AD2d 179, 205-206 [1st Dept 1998]; *see also Zwecker v Kulberg*, 209 AD2d 514, 515 [2d Dept 1994]). Further, plaintiff sufficiently pleaded that defendants' advice was the proximate cause of its alleged damages.

Defendants argue that because the 2006 credit facility agreement was drafted by another law firm, it severed any causal chain between defendants' work in 2005 and plaintiff's increased tax liability. However, "[a]s a general rule, issues of proximate cause[, including superceding cause,] are for the trier of fact" (*Hahn v Tops Mkts., LLC*, 94 AD3d 1546, 1548 [4th Dept 2012] [alterations in original] [internal quotation marks omitted]) and defendants' contention is unavailing at this procedural juncture (*see Ableco Fin. LLC v Hilson*, 81 AD3d 416, 417 [1st Dept 2011]). Plaintiff alleges, inter alia, that it continually relied on defendants' advice for the purpose of shielding income from its off-shore subsidiary from federal

income tax and that defendant improperly advised it to make the 2005 "check-the-box" election, which greatly enlarged the prospective pool of income on which plaintiff could be taxed. Plaintiff further alleges that the error in advising it to make the check-the-box election, which according to defendant could not be changed for the next five years, was compounded by the error of changing the language in the credit facility agreements from several liability to joint and several liability, effectively transferring the entire pool of off-shore subsidiaries' income to plaintiff.

The motion court correctly determined that the complaint adequately pleads a valid claim of legal malpractice arising out of a 2011 memorandum. The documents submitted by defendants do not conclusively refute plaintiff's claim (*Amsterdam Hospitality Group, LLC v Marshall-Alan Assoc., Inc.*, 120 AD3d 431, 433 [1st Dept 2014]).

We have considered defendants' remaining arguments and find them unavailing. Concur—Acosta, J.P., Andrias and DeGrasse, JJ.

Saxe and Richter, JJ., concur in a separate memorandum by Richter, J., as follows: The majority concludes that plaintiff's legal malpractice claim based on defendants' tax advice dating back to 2005 is not time-barred. Although I agree that the complaint should not be dismissed at this stage of the proceedings, I disagree with the majority's conclusion that the entire malpractice claim is timely as a matter of law. Instead, I believe that issues of fact exist with respect to the continuous representation doctrine and that discovery is needed to resolve the statute of limitations question.

Plaintiff Overseas Shipholding Group, Inc. (OSG) is in the business of transporting bulk crude oil and refined petroleum products throughout the world.[1] OSG's operations in the United States are conducted by its wholly-owned subsidiary OSG Bulk Ships, Inc. (OBS), and its foreign business is conducted by OSG International, Inc. (OIN), another wholly-owned subsidiary. Defendant Proskauer Rose, LLP is a nationally-recognized law firm that has provided a variety of legal services to OSG since the company's inception in 1969. Defendant Alan P. Parnes, a partner at Proskauer and the leader of its New York tax team, served as OSG's primary tax counsel. The remaining defendants are partners at Proskauer.

Proskauer, through Parnes, was OSG's principal tax advisor

---

1. The facts set forth here are from OSG's complaint and are presumed to be true for purposes of this motion.

on issues related to the U.S. taxation of foreign shipping income earned by foreign subsidiaries of U.S. corporations, such as OIN. The tax treatment of such income has changed significantly over the years. As relevant here, since January 1, 2005, none of OIN's foreign shipping income has been subject to U.S. taxation unless it was either actually distributed to OSG in the form of a dividend, or deemed distributed under section 956 of the Internal Revenue Code (26 USC § 956). Section 956 provides, inter alia, that the earnings of a foreign subsidiary will be deemed to have been distributed to its U.S. parent under certain circumstances that are considered the functional equivalent of a dividend. These circumstances include when the assets of the foreign subsidiary are used to support the obligations of the U.S. parent, such as by way of a loan or guarantee.

As part of its representation of OSG, Proskauer negotiated and drafted a series of unsecured credit agreements for OSG and its subsidiaries, OIN and OBS. In agreements dated 1994 and 1997, OSG, OIN and OBS were "severally" liable only for the amounts each borrowed directly. In agreements dated 2000 and 2001, Proskauer changed the structure to provide that OSG, OIN and OBS were each borrowing on a "joint and several" basis. OSG alleges that this change in language had potentially dire tax consequences. According to OSG, the "joint and several" language was tantamount to a guarantee by OIN of OSG's borrowings under the credit agreements, rendering those borrowings a deemed dividend under section 956, and subjecting OSG to substantial U.S. income tax liability. OSG maintains that Proskauer never advised it that the new "joint and several" language could result in additional taxes for OSG, and that such failure fell below the standard of care owed by Proskauer to OSG.

OSG subsequently entered into a number of additional unsecured credit agreements from 2003 to 2006. Although Proskauer did not represent OSG in connection with these agreements, OSG alleges that it used the "joint and several" structure of the earlier Proskauer-drafted agreements as templates for the 2003-2006 agreements. According to OSG, Proskauer was aware of these credit agreements because copies were attached to certain filings with the Securities and Exchange Commission (SEC) for which Proskauer rendered legal advice. Further, during the time the agreements were negotiated, Proskauer continued to be OSG's principal tax advisor, including with respect to ongoing issues related to foreign shipping income taxation under section 956.

Liability under section 956 arises only to the extent the foreign subsidiary has current or accumulated earnings that have not already been subject to U.S. taxation. Thus, the taxable amount of an actual or deemed distribution of foreign income from OIN to OSG is limited by the amount of OIN's current or past accumulated untaxed earnings and profits. Since 2000, OIN itself did not have significant earnings; rather, the vast majority of OIN's earnings was generated by its lower-tier subsidiaries. Thus, any potential section 956 tax liability for OSG due to OIN's "joint and several" liability under the credit agreements would have been limited to the untaxed earnings and profits at the OIN level. The substantial accumulated untaxed earnings and profits of OIN's lower-tier subsidiaries would not have been included in calculating OSG's section 956 tax liability.

According to OSG, that changed in early 2005, when Parnes advised OSG to make certain elections under the Internal Revenue Code known as "check-the-box" elections. One of the effects of these elections was to disregard OIN's lower-tier subsidiaries as separate entities for U.S. income tax purposes and to treat OIN and its subsidiaries as a single taxpayer. Thus, the substantial accumulated untaxed earnings and profits of OIN's lower-tier subsidiaries would be considered, for tax purposes, as if they belonged to OIN. Because untaxed accumulated earnings and profits are the measure of the taxable amount of a section 956 deemed distribution, the result of the "check-the-box" elections was to dramatically increase OSG's potential tax liability due to the "joint and several" structure of the credit agreements. OSG alleges that Parnes neither reviewed the existing credit agreements to ensure that no negative tax consequences flowed from the elections, nor advised OSG to perform any such review itself. OSG followed Parnes's advice and made the recommended "check-the-box" elections. OSG alleges that this resulted in the addition of at least $1 billion of untaxed future earnings that subsequently became subject to section 956 tax liability due to the "joint and several" structure of the credit agreements.

In late 2010, OSG began working on a new unsecured credit agreement to replace the 2006 agreement, effective 2013. Proskauer represented OSG in negotiating and drafting this agreement, which used the same "joint and several" liability repayment structure that had existed in the previous post-1999 agreements. In April 2011, after reviewing a draft of the new agreement, Parnes told OSG that he was concerned that the "joint and several" language created a potential section 956

tax problem. OSG alleges that after researching the matter, Parnes concluded that there was "no tax solution" to the problem, but did not tell this to OSG. Several days later, however, a different Proskauer partner told OSG that Proskauer had since determined that the language of the agreement would not trigger section 956 tax liability.

In June 2011, Proskauer wrote a memorandum to OSG in which it concluded that the "joint and several" language in the various credit agreements did not obligate OIN to repay OSG's borrowings and thus would not give rise to a deemed dividend under section 956. Proskauer advised OSG that it could continue to borrow under the existing 2006 credit agreement, and enter into the new agreement, without any adverse tax consequences. Proskauer's opinion rested on its conclusion that the language in the agreements was ambiguous, and that it was clear, from parol evidence, that the parties never intended OIN to guarantee OSG's borrowings. The memorandum, however, did not disclose that Parnes had concluded there was "no tax solution" to the problem, or advise OSG of any risk that the "joint and several" language would be determined to be unambiguous. In reliance on Proskauer's advice, OSG executed the new credit agreement with the "joint and several" structure, and did not reexamine any of the draws it had previously taken under the earlier credit agreements.

In July 2012, OSG was contemplating a large drawdown on the existing 2006 credit agreement. In light of concerns voiced by the lenders, OSG asked Proskauer if it could still rely on the advice given in the June 2011 memorandum, and, according to OSG, Proskauer unequivocally told OSG that it could. Based on that representation, OSG proceeded with a $343 million drawdown, assuming that it could do so without section 956 tax exposure. OSG alleges that, subsequent to Proskauer's June 2011 memorandum and in reliance thereupon, OSG drew down a total of $659 million under the 2006 credit agreement.

In October 2012, OSG filed a form with the SEC withdrawing its financial statements for the previous three years, effectively repudiating Proskauer's tax advice on the section 956 matter. Several weeks later, OSG filed for chapter 11 bankruptcy protection, and self-reported to the Internal Revenue Service (IRS) that some of its previous tax returns were incorrect. In February 2013, the IRS filed an amended claim in the OSG bankruptcy proceeding in the amount of several hundred million dollars, largely based on the section 956 issue.

In March 2014, OSG commenced this action asserting a cause of action for legal malpractice against Proskauer, Parnes, and

three other Proskauer partners (hereinafter, collectively Proskauer).[2] OSG's malpractice claim has two branches. In the first branch, OSG maintains that Proskauer breached its duty of care by providing negligent section 956 tax advice. OSG alleges, inter alia, that Proskauer failed to identify the issue with the "joint and several" language contained in OSG's credit agreements, improperly advised OSG to make the "check-the-box" elections, and failed to disclose to OSG the tax consequences stemming from the credit agreements and the "check-the-box" elections.[3] The second branch of the malpractice claim centers around Proskauer's June 2011 memorandum, reaffirmed in 2012, advising OSG that there were no adverse section 956 tax issues with its credit agreements. OSG maintains that Proskauer's advice that the "joint and several" language in the agreements did not create a taxable deemed dividend under section 956 was "dead wrong."

Proskauer sought dismissal of the legal malpractice claim, arguing that the first branch was barred by the statute of limitations, and that the second branch was barred by documentary evidence. Proskauer also argued that the claim as a whole does not state a cause of action due to lack of causation.[4] The motion court denied Proskauer's motion and this appeal followed.

On appeal, Proskauer contends that the branch of the malpractice claim related to the 2005 "check-the-box" advice (the 2005 claim) is time-barred.[5] In addressing a statute of limitations issue arising from a CPLR 3211 motion, the allegations of the complaint must be given a liberal construction and accepted as true (*Simcuski v Saeli*, 44 NY2d 442, 446-447 [1978]; *Johnson v Proskauer Rose LLP*, 129 AD3d 59, 67 [1st Dept 2015]). Further, a plaintiff must be accorded the benefit of every possible favorable inference, and "[w]hether a plaintiff can ultimately establish its allegations is not part of the calculus in determining a motion to dismiss" (*Johnson*, 129 AD3d at 67 [alteration in original] [internal quotation marks omitted]).

---

**2.** The complaint also asserted a cause of action for breach of the duty of loyalty. That claim was dismissed as duplicative by the motion court and is not the subject of this appeal.

**3.** Although OSG does not seek damages for Proskauer's alleged negligent advice concerning the 2000 and 2001 credit agreements, OSG maintains that such negligence is relevant to Proskauer's subsequent malpractice.

**4.** Proskauer makes no argument that the second branch, which relates to the June 2011 memorandum, is time-barred.

**5.** Proskauer also argues that OSG cannot establish causation with respect to either branch of the malpractice claim, and that documentary evidence bars the second branch. I agree with the majority's rejection of these arguments.

The statute of limitations for a legal malpractice claim is three years running from the date the alleged malpractice was committed (CPLR 214 [6]; *Waggoner v Caruso*, 68 AD3d 1, 6 [1st Dept 2009], *affd* 14 NY3d 874 [2010]). OSG concedes that this action was brought more than three years after the 2005 advice was rendered, but argues that the limitations period should be tolled due to Proskauer's continuing representation of OSG. Under the continuous representation doctrine, the statute of limitations for legal malpractice is tolled while there is an "ongoing provision of professional services with respect to the contested matter or transaction" (*Matter of Lawrence*, 24 NY3d 320, 341 [2014]). The ongoing representation must relate "specifically to the matter in which the attorney committed the alleged malpractice" (*Shumsky v Eisenstein*, 96 NY2d 164, 168 [2001]). The doctrine, however, does not apply to a client's "continuing general relationship with a lawyer . . . involving only routine contact for miscellaneous legal representation . . . unrelated to the matter upon which the allegations of malpractice are predicated" (*id.*).

The continuous representation doctrine operates as a toll "only where there is a mutual understanding of the need for further representation on the specific subject matter underlying the malpractice claim" (*McCoy v Feinman*, 99 NY2d 295, 306 [2002]). The rationale underlying the doctrine is that a person seeking legal advice "has a right to repose confidence in the professional's ability and good faith, and realistically cannot be expected to question and assess the techniques employed or the manner in which the services are rendered" (*Shumsky*, 96 NY2d at 167 [internal quotation marks omitted]). Relatedly, a client cannot be expected to jeopardize his relationship with the attorney handling the matter while that same attorney continues to represent the client (*id.*). For these reasons, the limitations period is tolled until the ongoing representation is complete (*id.* at 167-168).

Here, Proskauer has met its prima facie burden of showing that this action was brought more than three years after the 2005 claim accrued. Thus, the burden shifted to OSG to "demonstrat[e] that the continuous representation doctrine applied, or at least that there was an issue of fact with respect thereto" (*CLP Leasing Co., LP v Nessen*, 12 AD3d 226, 227 [1st Dept 2004]). Although the majority would decide the limitations issue in OSG's favor as a matter of law, I believe that issues of fact exist and that a conclusive determination cannot be made on this pre-answer pleading motion (*see Weiss v Manfredi*, 83 NY2d 974, 977 [1994] [rejecting time-bar defense where there

was a question of fact as to whether the defendants continued to represent the plaintiff in connection with the matter]).

Because the statute of limitations period is tolled only where the ongoing legal representation is related to the "contested matter or transaction" (*Matter of Lawrence*, 24 NY3d at 341), it is essential to properly frame what that matter or transaction is. Proskauer narrowly defines the transaction as discrete, one-time tax advice concerning the "check-the-box" elections. Proskauer points out that the complaint does not allege that Proskauer gave OSG any further "check-the-box" advice after 2005. According to Proskauer, it could not have advised OSG any further on this matter because governing regulations prevented OSG from changing its "check-the-box" elections for a period of five years. Thus, Proskauer argues, its advice on the "check-the-box" elections came to an end when OSG made the elections, and no further representation continued on that matter.

In contrast to Proskauer's narrow framing of the matter, OSG more broadly defines it as section 956 tax advice provided to ensure that its foreign shipping income remained exempt from U.S. taxation. OSG maintains that the "check-the-box" advice did not simply flow from a one-time engagement, but was part and parcel of Proskauer's continuing representation on how OSG could legally avoid foreign income taxation. In support, OSG points to allegations in the complaint that Proskauer was OSG's principal tax advisor with respect to these issues spanning from at least 2005 until 2012, and that OSG regularly consulted Proskauer for advice in this area.

I find that Proskauer's framing of the matter is too narrow. By defining the matter as simply "check-the-box" advice, Proskauer ignores the complaint's allegations that Proskauer negligently failed to advise OSG of the potential section 956 tax liability that could be triggered as a result of the "joint and several" structure of the credit agreements if the "check-the-box" elections were made. In other words, the alleged malpractice relates not simply to the discrete "check-the-box" advice, but more broadly to how that advice affected taxation of foreign income in light of the existing credit agreements. Indeed, in its June 2011 memorandum, Proskauer expressly states that it had advised OSG "over the years" that OIN could not guarantee borrowings by OSG or any other domestic borrower.

On the other hand, I conclude that OSG's definition of the matter is too broad. By framing the matter as all tax advice concerning section 956, regardless of whether it was related to the "joint and several" structure of the credit agreements, OSG

impermissibly seeks to expand the continuous representation doctrine to cover its "continuing general relationship" with Proskauer involving "routine contact for miscellaneous legal representation" (*Shumsky*, 96 NY2d at 168). OSG's sweeping analysis would mean that the statute of limitations was tolled as long as Proskauer continued to give them any type of section 956 advice and would blur the line between representation on a specific matter and serving as general tax counsel (*see Williamson v PricewaterhouseCoopers LLP*, 9 NY3d 1, 11 [2007] [no continuous representation where allegations show "failures within a continuing professional relationship, not a course of representation as to the particular problems (conditions) that gave rise to plaintiff's malpractice claims"]).

Although neither party's framing of the contested matter withstands scrutiny, the precise scope of the matter within these two extremes cannot be determined in the absence of further discovery. The complaint alleges that Proskauer continuously served as OSG's tax counsel on section 956 matters, and sets forth an exhaustive list of numerous representations covered thereunder. Although some of these matters appear to have no connection to the matter from which the malpractice claim in this action arose, the record does not establish how all of these post-2005 section 956 matters relate to the problems that arose from Proskauer's alleged negligent advice concerning the "check-the-box" elections in the face of the "joint and several" structure of the credit agreements. Likewise, it cannot be determined whether all of these subsequent matters involve entirely separate transactions unrelated to the 2005 matter upon which the malpractice claim is predicated. Furthermore, OSG alleges that the 2006 credit agreement that continued the problematic "joint and several" liability language, although not drafted by Proskauer, was attached to SEC filings for which Proskauer rendered legal advice.

In determining whether the continuous representation tolling applies, it is essential to know whether "there is a mutual understanding of the need for further representation on the specific subject matter underlying the malpractice claim" (*McCoy v Feinman*, 99 NY2d at 306). In the absence of further discovery as to the parties' mutual understanding, any determination on the continuous representation toll would be premature. Relatedly, there is insufficient evidence of the precise scope and parameters of OSG's engagement of Proskauer (*see Williamson v PricewaterhouseCoopers LLP*, 9 NY3d at 10 [nature and scope of the parties' engagement play a key role in determining whether continuous representation

was contemplated by the parties]). Although the complaint alleges that the parties had only one engagement letter covering the entire period relevant to this case, the record does not contain a copy of that letter or any other details about the engagement.

Given the early stage of these proceedings, and in light of the disputed issues of fact on the continuous representation toll, I would affirm the decision of the motion court to deny Proskauer's motion to dismiss the 2005 claim as time-barred. Because a determination of the statute of limitations issue has the potential to dispose of a substantial part of OSG's complaint, a prudent option for the motion court would be to order limited discovery on the continuous representation issue followed by further briefing and, if necessary, an immediate trial on that issue (*see* CPLR 3212 [c]; *Deep v Boies*, 53 AD3d 948, 952 [3d Dept 2008]).