Moataz **MOHAMED**, individually and as personal representative of the estates of Aly Rashad Aly Mohamed and Baria Zaki Mohamed, deceased, Plaintiff,

v.

**DONALD J. NOLAN, LTD.,** d/b/a/ Nolan Law Group and Donald J. Nolan, individually, Defendants.

No. 12–CV–3139 (NGG)(JMA).

United States District Court, E.D. New York.

Aug. 28, 2013.

Adam H. Russ, Isaac Alony, Wasser and Russ LLP, New York, NY, Amir R. Tahmassebi, Konicek & Dillon P.C., Geneva, IL, for Plaintiff.

Thomas A. Leghorn, Wilson Elser Moskowitz Edelman & Dicker LLP, White Plains, NY, Joseph L. Francoeur, Wilson Elser Moskowitz Edelman & Dicker LLP, New York, NY, for Defendants.

## MEMORANDUM & ORDER

NICHOLAS G. GARAUFIS, District Judge.

Before the court is Defendants' motion to dismiss Plaintiff's Amended Complaint for failure to state a claim arguing, among other things, that Plaintiff's legal malpractice claims are time-barred. Because Plaintiff filed these claims more than nine years after the alleged malpractice, and because Plaintiff has failed to adequately allege that Defendants fraudulently concealed their purported malpractice, New York and Illinois law dictate that the mo-

tion to dismiss be GRANTED. As any attempt to amend would be futile, Plaintiff's Amended Complaint is DISMISSED WITH PREJUDICE.

## I. BACKGROUND

### A. Factual Background [1]

On October 30, 1999, Plaintiff's parents, Aly Rashad Aly Mohamed and Baria Zaki Mohamed, boarded EgyptAir flight 990 in Los Angeles, California, bound for Cairo, Egypt. (Am Compl. (Dkt. 4) ¶¶ 8–10.) In the early hours of October 31, 1999, EgyptAir flight 990 tragically crashed into the Atlantic Ocean approximately sixty miles south of Nantucket, Massachusetts, killing Plaintiff's parents. (*Id.* ¶¶ 11–12.)

In the weeks following the crash, Plaintiff and his family members were approached by an EgyptAir representative. (*See id.* ¶ 20.) Plaintiff accepted a sum of money described as "insurance" proceeds from EgyptAir. (*See id.* ¶¶ 20–25.) The EgyptAir representative never explained that this money was in exchange for a full release of all legal claims against EgyptAir or that Plaintiff and his family members should consult an attorney. (*See id.*)

On or about June 9, 2000—after Plaintiff had accepted EgyptAir's settlement offer—Defendant Donald J. Nolan ("Nolan") contacted Plaintiff in an effort to have Defendant Donald J. Nolan, Ltd. d/b/a Nolan Law Group ("Nolan Law Group") represent him in all claims arising from the EgyptAir flight 990 crash. (*Id.* ¶ 27.) On

August 19, 2000, Plaintiff and the Nolan Law Group entered into a retainer agreement in which Defendants agreed to represent Plaintiff against EgyptAir, The Boeing Company ("Boeing"), and the Parker Hannifin Corporation ("Parker"). (*Id.* ¶¶ 28–29; *see* Retainer Agreement (Ex. A to Am. Compl. (Dkt. 4–1)).) In order to secure this agreement, Defendants "misled plaintiff and made representations as to actions that would be taken that they did not intend to complete," including an attempt to vacate Plaintiff's release he had executed with EgyptAir. (Am. Compl. ¶¶ 31–33.)

On October 30, 2001, Defendants, on Plaintiff's behalf, filed suit in the Southern District of New York against EgyptAir, Boeing, and Parker identifying Plaintiff as his parents' purported "personal representative"; this case was later transferred to the Eastern District of New York as part of a multidistrict litigation (the "Underlying Case"). (*See id.* ¶ 34.) At the time of filing, however, Defendants had not ensured that Plaintiff was properly appointed by a court as the personal representative of his parents' estate. (*See id.* ¶ 35.)

While the litigation was pending, Defendant Nolan Law Group (via the attorney of record, Jerry Skinner) moved to withdraw as counsel on February 28, 2008. Mot. to Withdraw, *In re Air Crash Near Nantucket Island, Mass., on Oct. 31, 1999* ("*In re Crash*"), No. 00–MD–1344 (BMC)(RML) (E.D.N.Y. Feb. 28, 2008), Dkt. 455.[2] On

---

**1.** The following facts are taken from the Amended Complaint, the exhibits attached thereto, and matters subject to judicial notice. (*See infra* Part II (detailing the materials that may be consulted in deciding a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)).) Because the court has not consulted any of the extraneous filings submitted in connection with the motion to dismiss (*e.g.,* Tahmassebi Decl., (Dkt. 24); Mohamed Decl. (Dkt. 25)), it

need not convert this motion to one for summary judgment, see Fed.R.Civ.P. 12(d) (requiring conversion "[i]f, on a motion under Rule 12(b)(6)[,] ... matters outside the pleadings are presented to and not excluded by the court").

**2.** As detailed below, the court may consult matters subject to judicial notice in deciding this motion to dismiss. (*See infra* Part II.)

June 27, 2008, Plaintiff noticed his consent to Defendants' motion to withdraw. Mohamed Aff., *id.* (E.D.N.Y. June 27, 2008), Dkt. 507. And on August 15, 2008, the Honorable Brian M. Cogan granted Defendants' motion. Order, id (E.D.N.Y. Aug. 15, 2008), Dkt. 519, at 1.

On March 29, 2010, Judge Cogan, on motion of the defendants in the Underlying Case, dismissed Plaintiff's action on the ground that he had not been timely appointed the personal representative of his parents' estate and therefore lacked the capacity to sue. (*See* Mar. 29, 2010, Mem. & Order (Ex. C to Am. Compl. (Dkt. 4–3)) ("Underlying Dismissal") at 7–8.) Judge Cogan reasoned that because Plaintiff's claims were subject to the Death on the High Seas Act ("DOHSA"), his failure to be properly appointed the personal representative of his parents' estate by October 31, 2002—the end of the three-year statute of limitations period that began to run from his parents' death, *see* 46 U.S.C. § 30106—required dismissal. (*See* Underlying Dismissal at 8–9 & n. 4.) In doing so, Judge Cogan rejected Plaintiff's attempt to characterize his nearly ten-year delay as "justified" by Defendants' alleged malpractice in failing to secure Plaintiff's personal representative status. (*See id.* at 9–10 ("Having chosen to retain his attorney, plaintiff is responsible for his attorney's negligent conduct or bad advice in connection with the action.").) Judge Cogan noted that Plaintiff's attempts to "obtain personal representative status since 2001 indicate[d] that he was personally aware that he did not have the right to bring the action without first becoming representative of his parents' estates." (*Id.* at 10.)

## B. Procedural History

On June 22, 2012, Plaintiff, invoking the court's diversity jurisdiction, filed his Complaint seeking compensatory and punitive damages against Defendants for their alleged malpractice, (Compl. (Dkt. 1).) On August 1, 2012, Plaintiff filed an Amendment Complaint. (Am. Compl.)

On January 4, 2013, Defendants filed the fully-briefed motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), which included: (1) their memorandum in support (Def. Mem. (Dkt. 22)); (2) Plaintiff's opposition; (Pl. Opp'n (Dkt. 23)); and (3) Defendants' reply (Def. Reply (Dkt. 26)).

On January 29, 2013, Plaintiff moved for leave to file a sur-reply. (Pl. Sur–Reply (Dkt. 27).) Over Defendants' objection (*see* Jan. 30, 2013, Def. Ltr. (Dkt. 29)), the court granted Plaintiff's application (Feb. 1, 2013, Order (Dkt. 30)) and permitted Defendants to submit a sur-sur-reply (*see* Feb. 5, 2013, Order (Dkt. 33)), which they filed on February 12, 2013 (Def. Sur–Sur-Reply (Dkt. 34)).

## II. STANDARD OF REVIEW

In considering a motion to dismiss for failure to state a claim for which relief can be granted filed under Federal Rule of Civil Procedure 12(b)(6), a court must assume all the alleged facts to be true and construe the complaint in the light most favorable to the plaintiff. *See In re NYSE Specialists Sec. Litig.,* 503 F.3d 89, 95 (2d Cir.2007). To survive the motion, a claim must be more than a mere recitation of the elements of a cause of action or series of legal conclusions. *See Ashcroft v. Iqbal,* 556 U.S. 662, 677–79, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). The complaint instead must provide enough factual content that, when taken as true, would allow a court to draw a "reasonable inference" that the plaintiff is entitled to relief. *Id.* at 678, 129 S.Ct. 1937. This means that a claim for relief must be plausible; it must raise more than "the mere possibility of

misconduct" by a defendant. *Id.* at 678–79, 129 S.Ct. 1937.

The materials a court may consider when deciding a motion to dismiss filed under Rule 12(b)(6) are limited. "[A] district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir.2010). "Courts may also properly consider 'matters of which judicial notice may be taken....'" *Halebian v. Berv,* 644 F.3d 122, 131 n. 7 (2d Cir.2011) (citation omitted). Specifically, "[a] court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Global Network Commc'ns, Inc. v. City of N.Y.,* 458 F.3d 150, 157 (2d Cir.2006) (internal quotation marks omitted). "[W]hen matters outside the pleadings are presented in response to a 12(b)(6) motion," a district court must either "exclude the additional material and decide the motion on the complaint alone" or "convert the motion to one for summary judgment under [Federal Rule of Civil Procedure 56] and afford all parties the opportunity to present supporting material." *Fonte v. Bd. of Managers of Continental Towers Condo.,* 848 F.2d 24, 25 (2d Cir.1988); *see also* Fed.R.Civ.P. 12(d).

## III. DISCUSSION

Defendants have moved to dismiss Plaintiff's Amended Complaint pursuant to Federal Rule 12(b)(6) on a number of grounds, including that the malpractice claims are barred by the relevant statutes of limitations and repose in New York and Illinois. As both sources of substantive law—which the court must apply when sitting in diversity, *see generally Guaranty*

*Trust Co. v. York,* 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945); *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)—require dismissal of Plaintiff's claims, the court need not, and therefore does not, resolve the choice-of-law issue or address Defendants' other contentions.

### A. Choice of Law

Unfortunately, the parties have not crystalized the issue of which state's law should apply. Throughout their papers, both sides contend that their arguments are supported by both New York law—which would likely apply in the absence of an agreement to the contrary, *see generally Licci ex rel. Licci v. Lebanese Canadian Bank, SAL,* 672 F.3d 155, 157–58 (2d Cir.2012); *DeMasi v. Rogers,* 34 A.D.3d 720, 826 N.Y.S.2d 106, 108 (2d Dep't 2006)—and Illinois law—which is specified in the parties' retainer agreement (*see* Retainer Agreement, art. IX). (Pl. Opp'n at 7–12; Def. Reply at 2–4.) According to Plaintiff, both New York and Illinois law permit his malpractice claims because he filed suit less than three years after Judge Cogan dismissed his DOHSA claims in the Underlying Case for lack of capacity to sue. Defendants rejoin that the law of both states precludes the instant suit because it was filed long after Defendants committed the alleged misconduct—the failure to have Plaintiff awarded representative status of his parents' estates within the DOHSA's three-year statute of limitations period.

Where the parties seem to dispute (or at least not agree) which state law should apply, the court need not decide the issue if the result is the same under either regime. *See Schnabel v. Trilegiant Corp.,* 697 F.3d 110, 119 (2d Cir.2012) (declining to decide a "thorny choice-of-law question" that is "without significance" because both

states "apply substantively similar rules"). Because Plaintiff's claims in the instant case must be dismissed under both New York and Illinois law, the court will not decide the choice-of-law issue. Though the end result is the same, however, the route taken is different. Accordingly, the court will analyze the timeliness issue under both New York and Illinois law.

### B. Statute of Limitations and Repose

#### 1. *New York Law*

 "An action to recover damages [under New York law] arising from an attorney's malpractice must be commenced within three years from accrual." *McCoy v. Feinman*, 99 N.Y.2d 295, 301, 755 N.Y.S.2d 693, 785 N.E.2d 714 (2002); *see* N.Y.C.P.L.R. § 214(6). Typically, "this accrual time is measured from the day an actionable injury occurs, 'even if the aggrieved party is then ignorant of the wrong or injury.'" *McCoy*, 99 N.Y.2d at 301, 755 N.Y.S.2d 693, 785 N.E.2d 714 (quoting *Ackerman v. Price Waterhouse*, 84 N.Y.2d 535, 541, 620 N.Y.S.2d 318, 644 N.E.2d 1009 (1994)). In other words, "[w]hat is important is when the malpractice was committed, not when the client discovers it." *Id.* (internal quotation marks omitted); *see Williamson v. PricewaterhouseCoopers LLP*, 9 N.Y.3d 1, 7–8, 840 N.Y.S.2d 730, 872 N.E.2d 842 (2007); *Boyd v. Gering, Gross & Gross*, 226 A.D.2d 489, 641 N.Y.S.2d 108, 108 (2d Dep't 1996) ("The law is well settled that an action to recover damages for legal malpractice accrues when the malpractice is committed.").

Thus, to determine when "actionable injury" occurred, which "trigger[s] accrual of the malpractice claim," *McCoy*, 99 N.Y.2d

at 302, 755 N.Y.S.2d 693, 785 N.E.2d 714, the court must examine the law governing Plaintiff's claims in the Underlying Action.

 As Judge Cogan explained (*see* Underlying Dismissal at 8–10 & n. 4), the DOHSA is the exclusive remedy for United States residents' injuries suffered on the high seas, *see generally Zicherman v. Korean Air Lines Co., Ltd.*, 516 U.S. 217, 229–31, 116 S.Ct. 629, 133 L.Ed.2d 596 (1996). The DOHSA establishes a three-year statute of limitations, 46 U.S.C. § 30106,[3] and further provides that the "personal representative of the decedent may maintain a suit for damages ... for the exclusive benefit of the decedent's wife, husband, parent, child or dependent relative against the vessel, person, or corporation which would have been liable if death had not ensued," *id.* § 761. Beneficiaries have no right to sue on their own behalf. *Complaint of Cosmopolitan Shipping Co.*, 453 F.Supp. 265, 266 (S.D.N.Y. 1978).

"[T]he term personal representative requires some designation by a court that the individual seeking to prosecute the wrongful death action is an administrator of the decedent's estate." *Id.; see Homlaor v. Korean Air Lines Co., Ltd.*, No. 84–CV–4083 (TPG), 1997 WL 289477, at *3 (S.D.N.Y. May 30, 1997) ("The 'personal representative' of the decedent must be a person empowered by law to administer the decedent's estate."); *Cruz v. Korean Air Lines Co., Ltd.*, 838 F.Supp. 843, 846 (S.D.N.Y.1993). The confluence of the personal representative prerequisite and the three-year statute of limitations therefore required Plaintiff to obtain personal representative status over his parents' estate and to file suit pursuant to the DOH-

---

**3.** This statute of limitations may only be tolled if the plaintiff can establish a "strong justification." *Public Adm'r of Cnty. of N.Y. v.* *Angela Compania Naviera, S.A.*, 592 F.2d 58, 64 (2d Cir.1979).

SA by October 31, 2002—three years after his parents' death.

■ Given this legal framework, the three-year statute of limitations on Plaintiff's legal malpractice claims began to run on this date and expired on October 31, 2005. By October 31, 2002, Defendants had allegedly failed to obtain personal representative status for Plaintiff and caused injury because any future suit filed under the DOHSA would be time-barred and therefore futile. *See McCoy,* 99 N.Y.2d at 301–02, 755 N.Y.S.2d 693, 785 N.E.2d 714; *Shumsky v. Eisenstein,* 96 N.Y.2d 164, 166, 726 N.Y.S.2d 365, 750 N.E.2d 67 (2001) ("An action to recover damages for legal malpractice accrues when the malpractice is committed."). Thus, New York's three-year statute of limitations prevents the instant malpractice suit because it was filed on June 22, 2012—over six years late.

■ Even assuming that Plaintiff had not suffered any injury by October 31, 2002, the three-year statutory period was triggered *at the latest* on August 15, 2008, when Defendants' motion to withdraw as counsel from the Underlying Case was granted with Plaintiff's consent, *see* Order, *In re Crash,* 2008 WL 4426006 (E.D.N.Y. Aug. 15, 2008), Dkt. 519. *Cf. Aseel v. Jonathan E. Kroll & Assocs., PLLC,* 106 A.D.3d 1037, 966 N.Y.S.2d 202, 204 (2d Dep't 2013) ("The [legal malpractice] limitations period may be tolled by the continuous representation doctrine. . . ."). By that date, Defendants had certainly failed to ensure that Plaintiff acquired the prop-er status for his DOHSA suit or rectify their failure to timely do so. In other words, once Defendants' representation of Plaintiff ended, they necessarily had committed the alleged malpractice and the statute of limitations began to run. It is immaterial when Plaintiff discovered Defendants' alleged error. *See Williamson,* 9 N.Y.3d at 7–8, 840 N.Y.S.2d 730, 872 N.E.2d 842; *McCoy,* 99 N.Y.2d at 301, 755 N.Y.S.2d 693, 785 N.E.2d 714; *Wells Fargo Home Mortg., Inc. v. Zeichner, Ellman & Krause, LLP,* 5 A.D.3d 128, 771 N.Y.S.2d 892, 893 (1st Dep't 2004) ("The period of limitations in a legal malpractice action begins to run when the malpractice is committed, which in this case was no later than [when the defendants' representation had ended], not when the client discovers injury."); *Boyd,* 641 N.Y.S.2d at 109 (affirming dismissal of legal malpractice claims that were filed "approximately 12 years after the conclusion of any legal representation by the defendants," noting that "ignoran[ce] of the alleged wrong does not impact upon when the causes of action accrued"); *see also Perkins v. Am. Transit Ins. Co.,* No. 10–CV–5655 (CM), 2013 WL 174426, at *11 (S.D.N.Y. Jan. 15, 2013) (" 'An action to recover damages for legal malpractice accrues when the malpractice is committed,' not when it is discovered by the client." (citation omitted)). Using this date as the trigger for the three-year statute of limitations, Plaintiff's suit was still filed nearly a year late.[4]

Plaintiff counters that he did not suffer an "actionable injury" due to Defendants'

---

4. The parties devote the majority of their efforts to Defendants' alleged failure to secure authorized representative status for Plaintiff. Because Plaintiff's DOHSA claims were dismissed because of his lack of capacity to sue, Defendants' other purported misconduct—failing to (1) prosecute, including failure to take discovery and preserve critical evidence; (2) "give Plaintiff the opportunity to obtain an adequate settlement"; (3) prepare the case for trial; and (4) pursue a case against EgyptAir and/or vacate the "alleged settlement" with EgyptAir (*see* Am. Compl. ¶¶ 41, 48)—cannot support a malpractice claim as it was not, as a matter of law, a but for or proximate cause of Plaintiff's injury. *See generally Rubens v. Mason,* 527 F.3d 252, 254–55 (2d Cir.2008).

alleged malpractice until March 29, 2010, when Judge Cogan dismissed his claims in the Underlying Case, because before that point, "what, if anything, could Plaintiff have sued them for at the time of withdrawal?" (Pl. Opp'n at 12–15.) To answer, Plaintiff could have filed suit for Defendants' alleged failure to ensure that he obtained personal representative status over his parents' estate within the DOHSA timeframe. This would have been impossible, Plaintiff maintains, because "there would have been no way for Plaintiff to determine whether or not Defendants' actions had proximately caused him any actual or ascertainable damages" before the Underlying Dismissal. (Pl. Opp'n at 14.) But the injury occurred when his claims became time-barred. Plaintiff essentially requests to toll the statute of limitations because he was not aware of the impact of Defendants' alleged misconduct until Judge Cogan dismissed his suit. As New York courts have repeatedly held, however, "[a] claim accrues when the malpractice is committed, not when the client discovers it." [5] *Williamson*, 9 N.Y.3d at 7, 840 N.Y.S.2d 730, 872 N.E.2d 842; *see also McCoy*, 99 N.Y.2d at 301, 755 N.Y.S.2d

693, 785 N.E.2d 714; *Wells Fargo*, 771 N.Y.S.2d at 893.

Because of the harsh results this rule may cause, New York courts have recognized that the statute of limitations may be tolled [6] under the doctrine of equitable estoppel, and here Plaintiff asserts that this is such a case. "[E]quitable estoppel will apply 'where plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action,'" *Zumpano v. Quinn*, 6 N.Y.3d 666, 674, 816 N.Y.S.2d 703, 849 N.E.2d 926 (2006) (quoting *Simcuski v. Saeli*, 44 N.Y.2d 442, 449, 406 N.Y.S.2d 259, 377 N.E.2d 713 (1978)). A plaintiff asserting equitable estoppel "must demonstrate reasonable reliance on the defendant's misrepresentations." *Id.* "It is . . . fundamental to the application of equitable estoppel for plaintiffs to establish that subsequent and specific actions by defendants somehow kept them from timely bringing suit." *Id.* "[M]ere failure to disclose wrongdoing is not sufficient." *Nichols v. Curtis*, 104 A.D.3d 526, 962 N.Y.S.2d 98, 101 (1st Dep't 2013).

---

**5.** Plaintiff's cited authority is inapposite and does not controvert the long-standing rule that a legal malpractice claim accrues on the date of the misconduct, not when the effects of such misconduct are discovered, For instance, in *Frederick v. Meighan*, 75 A.D.3d 528, 905 N.Y.S.2d, 635 (2d Dep't 2010), the plaintiffs were initially successful in their underlying suit, but suffered an adverse judgment on appeal. *See id.* at 638. The Second Department held that the date of the appellate decision—and, not the date of the lawyers' alleged misconduct—triggered the statute of limitations because only then did the plaintiffs suffer "actionable injury." *Id.* at 639. By contrast, here Plaintiff suffered his injury at the latest when Defendants withdrew from the Underlying Case because by then they had failed to timely have Plaintiff appointed the personal representative of his parents' estate, rendering his DOHSA ineffective. At that point, if Plaintiff had been aware, he could

have filed suit immediately, charging that this misconduct forfeited his DOHSA's rights. The Underlying Dismissal did not affect this. Simply put, Judge Cogan's decision informed Plaintiff of this injury; it did not cause it.

**6.** Some New York courts have referred to the equitable estoppel doctrine as a bar to (rather than a toll of) the statute of limitations. *See, e.g., Walker v. N.Y. City Health and Hosps. Corp.*, 36 A.D.3d 509, 828 N.Y.S.2d 365, 366 (1st Dep't 2007) ("The extraordinary remedy of equitable estoppel may be invoked to bar the affirmative defense of the statute of limitations...."). Regardless of the terminology used, Plaintiff's argument fails because for the reasons explained below either the equitable estoppel doctrine's bar does not apply, or its toll ends more than three years before the instant suit was filed.

■ Plaintiff's attempt to estop Defendants from asserting a statute of limitations defense falls short. Plaintiff's allegations establish only that Defendants failed to ensure that Plaintiff was properly appointed the personal representative of his parents' estate and do not detail any concealment of this malpractice. (*See generally* Am. Compl. ¶¶ 26–36.) The lone reference to any misrepresentations by Defendants in the Amended Complaint is that "in order to be retained, [Defendants] misled plaintiffs and made representations as to actions that would be taken that they did not intend to complete." (*Id.* ¶ 31.) This cannot save Plaintiff's suit for three reasons.

■ Most importantly, Plaintiff's claim that Defendants' failure to disclose their alleged misconduct warrants invocation of the equitable estoppel doctrine is legally insufficient. "[I]n order to demonstrate a basis for the application of equitable estoppel, a plaintiff must allege more than that the defendant remained silent regarding the initial wrong." *Tenamee v. Schmukler*, 438 F.Supp.2d 438, 445 (S.D.N.Y.2006); *see Nichols*, 962 N.Y.S.2d at 101 (rejecting the plaintiff's attempt to invoke equitable estoppel where she only alleged failure to disclose, not "specific actions by [her former attorney] defendants that kept her from timely bring suit"); *Waggoner v. Caruso*, 873 N.Y.S.2d 238, 2008 WL 4274491 at *11 (N.Y.Sup.Ct.2008) (table) ("Plaintiffs' equitable estoppel argument must be premised on facts different than those that make up the malpractice claim itself[; o]therwise the statute of limitations for legal malpractice would have no effect, be-

cause any attorney who fails to disclose his malpractice, or who commits malpractice by some act of nondisclosure, would be estopped from asserting the statute of limitations as a defense."). Plaintiff has not alleged in his Amended Complaint that Defendants affirmatively misled him about their failure to ensure representative status over his parents' estate. The only mention of deceit in Plaintiff's Amended Complaint concerns purported misconduct that Defendants committed to consummate the lawyer-client relationship, not to conceal alleged misconduct that allegedly occurred years later. This cannot suffice. *See Nichols*, 962 N.Y.S.2d at 101.

Additionally, even if Defendants had affirmatively sought to conceal their misconduct, these representations (and the tolling permitted by the equitable estoppel doctrine) necessarily ended when Defendants' motion to withdraw as counsel in the Underlying Case was granted on August 15, 2008, more than three years before Plaintiff filed this legal malpractice suit. *See* Order, *In re Crash*, 2008 WL 4426006 (E.D.N.Y. Aug. 15, 2008), Dkt. 519. After Defendants ended their relationship and ceased their alleged concealment, Plaintiff had over three years—more time than is afforded by the statute of limitations period—to discover the alleged malpractice and file suit. His failure to do so is fatal to his legal malpractice claims.[7] *Cf. Lytell v. Lorusso*, 74 A.D.3d 905, 903 N.Y.S.2d 98, 100–01 (2d Dep't 2010) (permitting legal malpractice claims to proceed where "the complaint adequately alleged that the plaintiff was 'left with the reasonable im-

---

7. This conclusion comports with New York's continuous representation doctrine (not argued by Plaintiff here), which tolls the statute of limitations for the duration of the attorney-client relationship that "pertains specifically to the matter in which the attorney committed the alleged malpractice." *Shumsky v. Eisen-*

stein, 96 N.Y.2d 164, 168, 726 N.Y.S.2d 365, 750 N.E.2d 67 (2001); *see* N.Y.C.P.L.R. § 214–a. This toll necessarily ends at the conclusion of the representation. So too does the relief granted by the equitable estoppel doctrine.

pression that [defendant attorney] was, in fact, actively addressing [his] legal needs'" within the statutory period because the defendant "failed to demonstrate that the plaintiff knew or should have known that [the defendant] had stopped representing him in the matter more than three years before the action was commenced" (citation omitted) (last alteration supplied)).

*Shumsky v. Eisenstein,* 96 N.Y.2d 164, 726 N.Y.S.2d 365, 750 N.E.2d 67 (2001), is instructive in this regard. There, the plaintiffs had retained the defendant attorney to file a breach of contract case, but the defendant failed to commence the suit before the relevant statute of limitations had expired. *Id.* at 165, 726 N.Y.S.2d 365, 750 N.E.2d 67. The New York Court of Appeals held that the plaintiffs' legal malpractice cause of action accrued—and, therefore, the statute of limitations period began to run—"when the Statute of Limitations had expired on the underlying breach of contract action plaintiffs retained defendant to commence." *Id.* at 166, 726 N.Y.S.2d 365, 750 N.E.2d 67. The plaintiffs' claims were not time-barred, however, only because the defendant's continuous representation of the plaintiffs "left [them] with the reasonable impression that defendant was, in fact, actively addressing their legal needs" and therefore tolled the statute of limitations. *Id.* at 169, 726 N.Y.S.2d 365, 750 N.E.2d 67. The court specifically noted that "the continuous representation toll would ... end once the client is informed or otherwise put on notice of the attorney's withdrawal from representation." *Id.* at 170–71, 726 N.Y.S.2d 365, 750 N.E.2d 67.

Unlike in *Shumsky,* here Plaintiff was notified of Defendants' intention to withdraw from the Underlying Case by their motion filed in February of 2008, which was granted in August of 2008. Thus, any tolling permitted by the equitable estoppel doctrine ended and the three year statute of limitations began in August of 2008, expiring in August of 2011, before this suit was filed in June of 2012.

■ Finally, Plaintiff's failure to file suit for nearly two years after the Underlying Dismissal unearthed Defendants' purported misconduct cannot constitute the due diligence necessary to sustain a claim of equitable estoppel. *See Simcuski,* 44 N.Y.2d at 450, 406 N.Y.S.2d 259, 377 N.E.2d 713 ("[T]he burden is on the plaintiff to establish that the action was brought within a reasonable time after the facts giving rise to the estoppel have ceased to be operational."). "[A] plaintiff may not invoke equitable estoppel where the pertinent information needed to file a claim is discovered before the expiration of the statute of limitations." *Svenska Finans Intern'l BV v. Scolaro, Shulman, Cohen, Lawler & Burstein, P.C.,* 37 F.Supp.2d 178, 185 (N.D.N.Y.1999); *cf. Kamruddin v. Desmond,* 293 A.D.2d 714, 741 N.Y.S.2d 559, 561–62 (2d Dep't 2002) (permitting equitable estoppel where the defendant affirmatively withheld the production of documents evincing his medical malpractice until the day before the expiration of the statute of limitations period). "Although the question of whether a defendant should be equitably estopped is generally a question of fact, here, given [Plaintiff's] level of awareness and subsequent inaction, equitable estoppel is inappropriate as a matter of law." *Putter v. N. Shore Univ. Hosp.,* 7 N.Y.3d 548, 553, 825 N.Y.S.2d 435, 858 N.E.2d 1140 (2006). Under Plaintiff's theory, Defendants' concealment ended in March 2010. His failure to file this legal malpractice suit until June 2012 necessitates dismissal.

For these reasons, Plaintiff's claims are barred by New York's statute of limitations and cannot be saved by the doctrine of equitable estoppel. The court will now

examine how Plaintiff's claims fare under Illinois's regime.

### 2. *Illinois Law*

■■■ Under Illinois law, a legal malpractice action "must be commenced within 2 years from the time the person bringing the action knew or reasonable should have known of the injury for which damages are sought." 735 Ill. Comp. Stat. § 5/13–214.3(b). Thus, unlike in New York, "[t]he statute of limitations set forth in [this section] incorporates the 'discovery rule,' which serves to toll the limitations period to the time when the plaintiff knows or reasonably should know of his or her injury.' " *Snyder v. Heidelberger*, 352 Ill. Dec. 176, 953 N.E.2d 415, 418 (2011); *see Woidtke v. St. Clair Cnty., Ill.*, 335 F.3d 558, 562 (7th Cir.2003) ("Under Illinois law, a cause of action for legal malpractice accrues when the client discovers, or should have discovered, the facts establishing the elements of his cause of action.").

Strict application of this discovery rule could expose defendants to liability for an extraordinary length of time. For instance, if a plaintiff was unable to reasonably uncover her injury for twenty years, the discovery rule would permit a suit filed up to twenty-two years after the tort had been committed, Recognizing this potentially " 'long tail' of liability," the Illinois Legislature enacted a statute of repose to

"curtail" such exposure. *Snyder*, 352 Ill. Dec. 176, 953 N.E.2d at 418–19. It provides: "An action [subject to the two-year statute of limitations detailed above] may not be commenced in any event more than 6 years after the date on which the act or omission occurred." [8] 735 Ill. Comp. Stat. § 5/13–214.3(c).

■■■ Unlike the statute of limitations, "[t]he period of repose in a legal malpractice case begins to run on the last date on which the attorney performs the work involved in the alleged negligence." [9] *Snyder*, 352 Ill.Dec. 176, 953 N.E.2d at 421; *see Mauer v. Rubin*, 401 Ill.App.3d 630, 339 Ill.Dec. 472, 926 N.E.2d 947, 955 (2010) (stating that Illinois's statute of repose "begins to run as soon as an event creating the malpractice occurs, regardless of whether any injury has yet resulted so as to cause an action to accrue"). "[T]he period of repose must begin when the acts of representation end, even if continuing omissions may contribute to the injury." *O'Brien v. Scovil*, 332 Ill.App.3d 1088, 266 Ill.Dec. 360, 774 N.E.2d 466, 468 (2002). "It is clear that the last act of representation with regard to the omission upon which malpractice is founded is the critical date that triggers the statute of repose." *Id.*

■■■ The statute of repose, however, is not absolute. Similar to New York

---

8. Plaintiff tried to exploit this apparent anomaly in Illinois law by omitting any mention of the statute of repose when he relied on Illinois's statute of limitations in his opposition to Defendants' motion to dismiss. (*See* Pl. Mem. at 9–12.) One might reasonably argue that this failure amounts to a breach of Plaintiff's counsel's ethical duty under New York's Code of Professional Responsibility. *See* N.Y.Code of Prof'l Responsibility (Dec. 28, 2007) EC 7–23 ("Where a lawyer knows of controlling legal authority directly adverse to the position of the client, the lawyer should inform the tribunal of its existence unless the adversary has done so ...."); *see also* Model

Rules Prof'l Conduct R. 3.3. Counsel is hereby advised to be completely forthcoming in all future submissions presented to any court.

9. Although similar, statutes of limitations and statutes of repose are analytically distinct. "[A] statute of limitations governs the time within which lawsuits may be commenced after a cause of action has accrued, while a statute of repose extinguishes the action itself after a fixed period of time, regardless of when the action accrued." *DeLuna v. Burciaga*, 223 Ill.2d 49, 306 Ill.Dec. 136, 857 N.E.2d 229, 237 (2006).

law, Illinois law permits tolling of the statute of repose if the plaintiff can satisfy the requirements of equitable estoppel.[10] A party claiming estoppel must prove:

> (1) the other person misrepresented or concealed material facts; (2) the other person knew at the time he or she made the representations that they were untrue; (3) the party claiming estoppel did not know that the representations were untrue when they were made and when that party decided to act, or not, upon the representations; (4) the other person intended or reasonably expected that the party claiming estoppel would determine whether to act, or not, based upon the representations; (5) the party claiming estoppel reasonably relied upon the representations in good faith to his or her detriment; and (6) the party claiming estoppel would be prejudiced by his or her reliance on the representations if the other person is permitted to deny the truth thereof.

*DeLuna v. Burciaga,* 223 Ill.2d 49, 306 Ill.Dec. 136, 857 N.E.2d 229, 249 (2006). " '[I]t is not necessary that the defendant intentionally mislead or deceive the plaintiff, or even intend by its conduct to induce delay. Rather, all that is necessary for invocation of the doctrine of equitable estoppel is that the plaintiff reasonably relies on the defendant's conduct or representations in forbearing suit.' " *Jackson Jordan, Inc. v. Leydig, Voit & Mayer,* 158 Ill.2d 240, 198 Ill.Dec. 786, 633 N.E.2d 627, 632 (1994) (citations omitted). Importantly, however, "[e]quitable estoppel will not

apply if the defendant's conduct ended within ample time to allow a plaintiff to avail himself of his legal rights under the statute of limitations." *Butler v. Mayer, Brown & Platt,* 301 Ill.App.3d 919, 235 Ill.Dec. 167, 704 N.E.2d 740, 745 (1998); *see also Ennenga v. Starns,* 677 F.3d 766, 775 (7th Cir.2012) ("In Illinois, courts will not equitably toll a statute of limitations based on a claim of fraudulent concealment 'if the plaintiff discovers the fraudulent concealment and a reasonable time remains within the relevant limitations period . . . .' " (quoting *Barratt v. Goldberg,* 296 Ill.App.3d 252, 230 Ill.Dec. 635, 694 N.E.2d 604, 609 (1998)) (alteration in original)).

Despite the availability of this doctrine, Plaintiff cannot avoid dismissal under Illinois law. The statute of repose began to run on the deadline by which Defendants were to ensure that Plaintiff was properly authorized to act as the personal representative of his parents' estate—under the DOHSA, three years after the crash, or October 31, 2002. *See* 46 U.S.C. § 30106. As of this date, Defendants allegedly failed to ensure that any DOHSA suit was viable. In other words, by not ensuring Plaintiff's status by this moment, Defendants committed their last act of negligence. *Mauer,* 339 Ill.Dec. 472, 926 N.E.2d at 955. "[W]hether any injury has yet resulted so as to cause an action to accrue" is entirely irrelevant. *Id.; see also Tidemann v. Schiff, Hardin & Waite,* No. 03–C–998, 2005 WL 475163, at *1 (N.D.Ill. Feb. 28, 2005) ("The commence-

---

**10.** The Illinois Supreme Court has also recognized that § 5/13–215—which provides that the victim of fraudulent concealment may file suit within five years of discovering that she has a cause of action—is another ground for tolling the statute of repose. *DeLuna,* 306 Ill.Dec. 136, 857 N.E.2d at 244. Plaintiff does not argue that § 13–215's fraudulent concealment statute applies; instead, he re-

lies on the doctrine of equitable estoppel. As Illinois courts have indicated that the "common-law doctrine of equitable estoppel, as applied in the context of the statute of repose, parallels the fraudulent concealment statute," *Mauer,* 339 Ill.Dec. 472, 926 N.E.2d at 962, the court, where appropriate, cites to both doctrines.

ment of the six-year repose period is not related to the accrual of a cause of action, and thus it can begin before an injury has been discovered or even occurred.").

Recognizing that an attorney's misconduct triggers the statute of repose, courts in analogous circumstances have held that the failure to act by a specified deadline starts the six-year clock. For instance, in *Koczor v. Melnyk*, 407 Ill.App.3d 994, 348 Ill.Dec. 392, 944 N.E.2d 345 (2011), the plaintiffs accused the defendant, their former attorney, of failing to timely record the deed for certain property they had purchased, which forced them to hire a new attorney and placed at risk their ability to construct a home on that lot. *See id.*, 348 Ill.Dec. 392, 944 N.E.2d at 347–48. Under Illinois law, the deed had to be recorded by January 14, 2001, to avoid having the entire purchase voided. *See id.*, 348 Ill.Dec. 392, 944 N.E.2d at 349. The Illinois Appellate Court dismissed the claim as time-barred, explaining, "[s]ince plaintiffs' malpractice action is premised on defendant's failure to record the deed, then the last date on which an act or omission arising from defendant's performance of professional services occurred on January 14, 2001 [and under Illinois's statute of repose,] plaintiffs had six years from that date . . . to file their legal malpractice action." *Id.*, 348 Ill.Dec. 392, 944 N.E.2d at 350.

Here too Plaintiff asserts that Defendants improperly failed to take action by a specified date. According to Plaintiff, Defendants did not ensure that Plaintiff was appointed as the personal representative of his parents' estate by October 31, 2002—the expiration of the three-year statute of limitations set forth by DOHSA. As Judge Cogan correctly held, this failure extinguished any cause of action Plaintiff might have had to sue on behalf of his parents. Thus, this date triggers the six-

year statute of repose, and because Plaintiff filed the instant suit on June 22, 2012, his legal malpractice claims are time-barred. *See Koczor*, 348 Ill.Dec. 392, 944 N.E.2d at 350–51; *see also Mauer*, 339 Ill.Dec. 472, 926 N.E.2d at 955.

■ Plaintiff appears to agree that his Complaint was not filed within the six-year statute of repose period, Instead, he principally argues that his claims are timely under equitable estoppel principles. (*See* Pl. Sur–Reply at 4 ("The statute of repose does not incorporate the discovery rule but rather goes by the date of the last negligent act. However, the Illinois Supreme Court has routinely applied principles of equitable estoppel to statute of limitations or repose defenses in a legal malpractice case where the client was lulled into a false sense of security by the firm's soothing reassurances and advice.")). Relying principally on *DeLuna* and *Jackson Jordan*, Plaintiff argues that because Defendants did not disclose their purported failure to have Plaintiff appointed the personal representative of his parents' estate, Plaintiff's reliance on this silence "prevented [him] from bringing a malpractice claim against [Defendants] within the time period provided by the Statute of Repose." (*Id.* at 4–8.) He is mistaken.

First, as discussed above (*see supra* Part III.B.1), Plaintiff has not alleged that Defendants concealed or misrepresented their alleged malpractice, as is required under Illinois (and New York) law. *See Koczor*, 348 Ill.Dec. 392, 944 N.E.2d at 351 ("[T]here is a well-established rule that the basis of the legal malpractice action also cannot constitute the grounds for equitable estoppel. This statement means that there must be some representation by defendant that plaintiffs relied on to their detriment to prevent filing their legal malpractice action."). His lone allegation concerning deceit (*see* Am. Compl. ¶ 31) in no

way indicates that Defendants hid their purported malpractice. This alone defeats any claim of equitable estoppel. *See Koczor*, 348 Ill.Dec. 392, 944 N.E.2d at 351.

*DeLuna* and *Jackson Jordan* are not to the contrary. In *DeLuna*, the defendant attorney had

> pursued a course of conduct intended to conceal the facts giving rise to [plaintiffs'] legal malpractice action [1] by assuring plaintiffs ... as the deadline of the legal malpractice statute of repose approached, that their case was 'going very well,' [2] by failing to advise them, at [the same] meeting, of the true status of their case, [3] by again offering assurances [at a later meeting] that the case was 'going very well,' and [4] by further advising plaintiffs that there was no need to contact him more frequently about the status of the case.

306 Ill.Dec. 136, 857 N.E.2d at 248. In *Jackson Jordan*, the defendant attorney similarly gave "constant reassurances" about the viability of the plaintiff's defense in an underlying litigation, which caused the plaintiff's delay in filing the malpractice suit. *See* 198 Ill.Dec. 786, 633 N.E.2d at 632. Plaintiff here has offered no such allegations of repeated, affirmative misrepresentations (intentional or otherwise) sufficient to invoke the equitable estoppel doctrine. Instead, the only allegation concerning concealment relates to Defendants' purported misstatements made *before* they were retained by Plaintiff (*see* Am. Compl. ¶ 31); these of course cannot constitute a misrepresentation of malpractice allegedly committed much later.

Second, even assuming that Plaintiff's allegations, if true, satisfy each element of equitable estoppel, the Amended Complaint still must be dismissed because Defendants ceased their alleged concealment by withdrawing from the Underlying Case and having no further contact with Plaintiff over *eight months* before the statute of repose expired. When Defendants moved to withdraw as counsel from the Underlying Case on February 28, 2008, they necessarily ceased any concealment or misrepresentations that allegedly caused Plaintiff to delay in filing his malpractice suit. At that point, over eight months remained until the statute of repose expired on October 31, 2008 (six years after the DOHSA deadline passed); during this period, Plaintiff could not have been deceived by Defendants about their alleged malpractice. This precludes any claim of equitable estoppel. *See Serafin v. Seith*, 284 Ill. App.3d 577, 219 Ill.Dec. 794, 672 N.E.2d 302, 311 (1996) ("[T]he doctrine of equitable estoppel will not apply to a case if a defendant's conduct has terminated within ample time to allow the plaintiff to still avail himself of any legal rights he may have had."); *Real v. Kim*, 112 Ill.App.3d 427, 68 Ill.Dec. 139, 445 N.E.2d 783, 789 (1983) ("[A] defendant is not estopped to raise a limitations point because of any alleged 'lulling' of the plaintiff into inaction until after the limitation period where the 'lulling' period, if there was any, expired months before the statute barred the action and where there was ample time and opportunity for the plaintiff to avail of any legal rights he had." (internal quotation and citation omitted) (alteration in original)).

Eight months is more than ample time for Plaintiff to have filed suit and, consequently, to reject any claim of equitable estoppel under Illinois law. *See Ennenga*, 677 F.3d at 775 ("Here, George discovered the facts underlying his claim of fraudulent concealment with almost five months left on the limitations clock. The district court correctly held that this was a reasonable time within which to comply with the statute of limitations. We agree that equitable tolling does not apply."); *Mauer*, 339

Ill.Dec. 472, 926 N.E.2d at 964 ("We have held that as little as six months remaining in a statute of limitations period is ample time for a plaintiff to bring suit." (internal quotations and citations omitted)); *see also Rajcan v. Donald Garvey and Assocs., Ltd.*, 347 Ill.App.3d 403, 283 Ill.Dec. 120, 807 N.E.2d 725, 729 (2004) (stating in dicta that having been put on notice of fraudulent concealment, one year to file a legal malpractice suit is, "as a matter of law, a reasonable amount of time"); *Turner v. Nama*, 294 Ill.App.3d 19, 228 Ill.Dec. 431, 689 N.E.2d 303, 309 (1997) (holding that five months between the point at which the plaintiff "discovered or reasonably should have discovered the alleged concealment of her [medical malpractice] cause of action" and the expiration of the statute of limitations was sufficient).

Equitable estoppel is therefore inapplicable. Plaintiff's legal malpractice claims under Illinois law are barred by the six-year statute of repose and must be dismissed.[11]

### C. Leave to Replead

Ordinarily, upon granting a motion to dismiss the court should permit the Plaintiff to replead to cure any identified deficiency. *See Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 71 (2d Cir.2012); *see also* Fed.R.Civ.P. 15(a)(2) ("The court should freely give leave [to replead] when justice so requires."). However, leave to replead "should be denied in the event that amendment would be futile." *Port Dock & Stone Corp. v. Oldcastle Ne., Inc.*, 507 F.3d 117, 127 (2d Cir. 2007).

As explained above, Plaintiff's legal malpractice claims—whether brought under New York or Illinois law—are time-barred. (*See supra* Part III.B.) Moreover, no additional allegations could cure this deficiency because the Amended Complaint, the exhibits attached thereto, and matters subject to judicial notice conclusively establish that Plaintiff's claims are untimely. (*See id.*) Any amendment would therefore be futile. *See Grace v. Rosenstock*, 228 F.3d 40, 53 (2d Cir.2000) ("Amendment would likely be futile if, for example, the claims the plaintiff sought to add would be barred by the applicable statute of limitations."); *Thomas v. City of N.Y.*, No. 09–CV–3162 (CM)(HBP), 2010 WL 1729828, at *2 (S.D.N.Y. Apr. 22, 2010) (dismissing claims "with prejudice[ ] because the statute of limitations has run").

## IV. CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss is GRANTED. Plaintiff's Amended Complaint is DISMISSED WITH PREJUDICE as untimely.

SO ORDERED.

---

11. Because the court can competently decide the case on the merits, there is no need to transfer the case to the Northern District of Illinois, as Plaintiff belatedly requests. (*See* Pl. Opp'n at 23.) The court routinely applies the laws of other jurisdictions, and sees no reason why a court in the Northern District of Illinois "may better apply the laws involved in this matter." (*Id.*) Transfer under 28 U.S.C. § 1404(a) is therefore unwarranted.