*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  October 23, 2014          515948
                                                516003

_____

JOHN A. DEEP,

                    Appellant,

        v                                MEMORANDUM AND ORDER

DAVID BOIES et al.,

                    Respondents,
                    et al.,
                    Defendant.

_____

Calendar Date:   September 9, 2014

Before:  Lahtinen, J.P., Rose, Egan Jr., Lynch and Clark, JJ.

                    _____


        John A. Deep, Cohoes, appellant pro se.

        Gleason, Dunn, Walsh & O'Shea, Albany (Thomas F. Gleason of
counsel), for respondents.

                    _____


Lynch, J.

        Appeals (1) from a judgment of the Supreme Court (Platkin,
J.), entered September 27, 2012 in Albany County, upon a
dismissal of the complaint at the close of defendants' case, and
(2) from an order of said court, entered December 6, 2012 in
Albany County, which, among other things, denied plaintiff's
motion for reconsideration.

        As detailed in our prior decision in this matter (53 AD3d
948 [2008]), plaintiff commenced this action in October 2005
alleging that defendant David Boies, defendant Boies, Schiller &
Flexner, LLP (hereinafter BSF) and defendant Straus & Boies LLP
engaged in certain acts of legal malpractice.  Pertinent here,

plaintiff alleged that Boies, BSF and Straus & Boies (hereinafter collectively referred to as defendants) misappropriated plaintiff's file sharing software, known as Aimster, while serving as his counsel with regard to myriad transactions involving the different corporate entities established to develop and market the software. In our prior decision, we affirmed Supreme Court's rulings that the cause of action for malpractice based on the misappropriation was asserted outside of the applicable three-year statute of limitations (see CPLR 214 [6]), but questions of fact existed with regard to whether the time to commence the action was tolled by the continuous representation doctrine (53 AD3d at 952). We observed that "after appropriate discovery, the trial court [could] elect to order an immediate trial on this issue as it could expeditiously dispose of the entire action" (id. at 952). With the parties' consent, Supreme Court oversaw what became protracted discovery before scheduling a trial pursuant to CPLR 3212 (c). Following the trial, the court dismissed plaintiff's complaint and, thereafter, denied plaintiff's motions for a new trial and/or to renew or reargue (see CPLR 2221, 4404). This Court denied plaintiff's motion to vacate our July 2008 decision and for expedited consideration and sanctions. Plaintiff now appeals from the judgment dismissing his complaint, as well as from the order denying plaintiff's posttrial motions.[1]

Although we previously denied defendants' request for summary judgment because the scope of the legal relationship between the parties was unclear, there is no dispute that BSF represented plaintiff in the copyright litigation and that their legal relationship in that litigation had terminated by November 4, 2002. According to plaintiff, defendants misappropriated software, at the latest, on June 25, 2002 (53 AD3d at 950). Since this action was not commenced until October 28, 2005,

---

[1] Although plaintiff appeals the order denying his posttrial motions, such appeal is deemed abandoned by his failure to address it in his brief (see Matter of Ramaglia v New York State Dept. of Transp., 5 AD3d 909, 910 n [2004], lv denied 3 NY3d 601 [2004]).

outside of the three-year statute of limitations (see CPLR 214
[6]), plaintiff's burden of proof at trial was to establish that
the copyright litigation was part of a "continuing,
interconnected representation" (53 AD3d at 952) by defendants.
If so, the statute would have been tolled through November 4,
2002 and the action would have been commenced on a timely basis.

        "The continuous representation doctrine tolls the statute
of limitations . . . where there is a mutual understanding of the
need for further representation on the specific subject matter
underlying the malpractice claim" (McCoy v Feinman, 99 NY2d 295,
306 [2002]).  It requires more than a continuing, general,
professional relationship; it "tolls the [s]tatute of
[l]imitations only where the continuous representation pertains
specifically to the matter in which the attorney committed the
alleged malpractice" (Shumsky v Eisenstein, 96 NY2d 164, 168
[2001]).  Plaintiff concedes that there was no retainer agreement
or letter of engagement detailing the scope of the relationship
between plaintiff and defendants.  Rather, his claim of
continuous representation stems from unsigned correspondence
dated November 8, 2000, wherein an entity known as Datamine LLC,
purportedly controlled by Boies and/or members of his family,
outlined the advisory services it would provide to Buddy USA
Inc., an entity controlled by plaintiff and created to market and
develop the Aimster service, and correspondence dated November
15, 2000 from Boies addressed to plaintiff as chief executive
officer of Buddy USA, wherein Boies stated that his son had
agreed to serve on Buddy USA's board of directors to represent
Datamine's 15% equity interest in the company.  According to
plaintiff, the November 15, 2000 letter confirmed an oral
agreement reached between Boies, plaintiff and defendant William
Duker during a meeting that they had in October 2000.[2]

_____

        [2]  Duker is a disbarred attorney and friend of Boies and
Boies' son.  According to plaintiff, Duker was an advisor who was
with him throughout the relevant time period.  Plaintiff believed
that Duker was a member of BSF, and he claimed that Duker was
able to contact Boies at "any hour of the day or night" to seek
legal advice and guidance on his behalf.  Although there is some

Where, as here, Supreme Court makes a determination following a nonjury trial pursuant to CPLR 3212 (c), our obligation is to "independently review the weight of the evidence and . . . grant the judgment warranted by the record, while according due deference to the trial judge's factual findings particularly where, as here, they rest largely upon credibility assessments" (Rini v Kenn-Schl, LLC, 64 AD3d 988, 989 [2009], lv denied 13 NY3d 711 [2009] [internal quotation marks and citations omitted]). Based upon our independent review of the record, we discern no error in Supreme Court's determination that plaintiff's misappropriation claim was barred by the statute of limitations.

During the trial, plaintiff testified that, at the time of the alleged oral agreement, he believed that Duker was an attorney with BSF. He explained that during the relevant time period, his "discussions" with Boies occurred via telephone, that is, he was in the room while Duker spoke to Boies on the telephone. As such, plaintiff was privy only to Duker's side of these conversations. Plaintiff also testified that he often met with Melissa Faas, the office manager at the BSF office located in the City of Albany, and she would relay messages to and from Boies with regard to legal services allegedly provided during October and November 2002.

Boies testified that there was no oral agreement to represent plaintiff and, though he recalled attending a football game with Duker, he denied ever meeting or speaking with plaintiff in October 2000. Faas testified that, although she did serve as office manager for BSF, Boies did not work out of the Albany office, she did not discuss business with Boies, and she was not authorized to speak for Boies and never told plaintiff

---

dispute as to the circumstances of the introduction, it is not disputed that it was Duker who introduced plaintiff to Boies. Plaintiff testified that they met in October 2000 at Boies' home and that they went to Boies' son's football game together. Boies testified that they first met at his birthday party, attended by more than 200 people, in March 2001.

otherwise. Kathleen Franklin, who served as an attorney in BSF's Albany office, testified that while she recalled meeting plaintiff, she also recalled advising plaintiff that she was representing BSF's clients, not plaintiff, in the transactions involving Aimster.[3]

At all times, it was plaintiff's burden to prove that the continuous representation doctrine applied here (see 860 Fifth Ave. Corp. v Superstructures-Engrs. & Architects, 15 AD3d 213, 213 [2005]). During the trial, even plaintiff conceded that while it was his hope that he would receive legal advice and guidance, neither Boies nor BSF ever formally agreed to represent him, and neither the November 8, 2000 Datamine letter nor the November 15, 2000 Boies letter could reasonably be construed as an offer to provide legal services to him individually. Rather, it appears that plaintiff relied on Duker's advice and guidance and that Duker led him to believe that he was an agent for either BSF or Boies. Plaintiff failed to offer any evidence, other than his own belief, to allow either Supreme Court or this Court to conclude that either BSF or Boies had any knowledge that Duker was extending himself in this manner. Plaintiff did not provide any written work product, nor was he able to recall the substantive content of any of the conversations he claims he had with Boies. In our view, Supreme Court was within its authority to credit the testimony of Boies and Franklin that there was no legal relationship between them. Rather, because it was plaintiff alone who believed that he was being represented by BSF and Boies, Supreme Court properly found that he did not establish the existence of an "interconnected" attorney-client relationship to handle plaintiff's personal affairs that was related to its

---

[3] At the time of these meetings, BSF was representing First Albany Corporation and Transworld Entertainment, entities that were early Aimster investors. Although plaintiff argues that Franklin's testimony contradicted a prior affirmation wherein she averred that she represented a corporate entity that plaintiff had an interest in, this was a credibility issue for Supreme Court and, moreover, not material to the issue presented for trial.

representation of him on the copyright claim (see Griffin v
Anslow, 17 AD3d 889, 892-893 [2005]; Volpe v Canfield, 237 AD2d
282, 283 [1997], lv denied 90 NY2d 802 [1997]).  Accordingly,
Supreme Court properly dismissed the complaint as barred by the
statute of limitations.

We reject plaintiff's argument that he was unable to meet
his burden because defendants failed to comply with their
discovery obligations.  Although discovery in this action was
underway prior to this Court's July 2008 decision, the record
reveals Supreme Court's extraordinary efforts, occurring over
more than three years since, to get the parties to complete
"appropriate discovery" (53 AD3d at 952) to allow the "immediate"
trial of the continuous representation issue.  Although
plaintiff was represented by counsel when disclosure began in
this case, he elected to represent himself in June 2009.  In
October 2009, he asked Supreme Court for an immediate trial
pursuant to CPLR 3212 (c).  In response, and as relevant here,
Supreme Court declined the request and instead issued an order
directing the parties to complete discovery with regard to the
continuous representation issue by the end of the year.[4]

The record confirms that discovery did not proceed as
expected and, in December 2009, Supreme Court issued a
stipulation and order that provided, in relevant part, that
defendants would "produce to plaintiff all documents currently in
[their] possession or control relating to the issue of [their]
alleged representation of plaintiff, provided however that [they]
shall not produce documents that are part of, or directly relate
to, files of clients other than plaintiff."  When plaintiff later
sought to enforce this order and to compel defendants to produce
a privilege log or allow an in camera inspection of a privilege
log,[5] Supreme Court denied the request, relying on the December

_____

[4]  Supreme Court issued this directive despite plaintiff's
claim that he was ready to proceed to an immediate trial.

[5]  In March 2008, prior to this Court's order, Supreme Court
had directed defendants to produce a privilege log.  Defendants

2009 order, which "carve[d] out from its ambit 'documents that are part of, or directly relate to, files of clients other than the [p]laintiff.'" Further, the court confirmed that the December 2009 order was a "short-term measure intended to allow depositions to go forward on the issue of plaintiff's claim of 'continuous representation,' while leaving broader questions regarding the production of client files – including defendants' compliance with [the March 2008 order of Supreme Court] calling for a privilege log - for another day." The court directed defendants to confirm that all documents that were not part of another client's file had been provided to plaintiff.

In the summer of 2010, after depositions were completed, plaintiff again claimed that he was ready to proceed to trial on the issue of continuous representation and, in seeming contrast, complained that, despite counsel's affirmed statement, defendants had not provided all documents relevant to the issue of continuous representation and that they "lost" electronic mail generated during 2002. Discovery was extended to obtain the electronic mail and, in March 2011, after plaintiff sought relief pursuant to CPLR 3126, Supreme Court found that plaintiff had not demonstrated that defendants had failed to produce documents relevant to their representation of plaintiff and that the December 2009 order relieved defendants of an obligation to produce records with regard to other clients. Finally, after plaintiff made another application, Supreme Court issued an order in November 2011 advising plaintiff that, because his requests for additional discovery were either not related to the issue of continuous representation or were attempts to "revisit prior orders," his requests were denied. The trial on the issue of continuous representation began in June 2012.

---

partially complied by producing a document that listed certain corporate clients, but did not identify any specific documents.

Plaintiff also alleges that defendants failed to maintain and provide plaintiff's own client records,[6] that Supreme Court refused to determine what documents defendants were required to maintain, and that the court failed to consider arguments with regard to the merits of his misappropriation claim. In plaintiff's view, the court should have imputed a legal relationship based on defendants' failure to maintain documentation.

"Trial courts have broad discretionary power to control and supervise discovery and determine what documents are 'material and necessary' under CPLR 3101 (a), with appellate courts intervening only where there has been a clear abuse of discretion" (Div-Com, Inc. v Tousignant, 116 AD3d 1118, 1119 [2014] [citations omitted]; see Hameroff & Sons, LLC v Plank, LLC, 108 AD3d 908, 909 [2013]). We are unable to conclude that Supreme Court abused its discretion here. Rather, Supreme Court, at all times with the parties' apparent consent, labored to focus the discovery to the issue to be resolved — the scope and nature of plaintiff's relationship with Boies and BSF. While Supreme Court did order defendants to produce a privilege log in March 2008, the directive was made prior to this Court's order. Moreover, at numerous times during the ensuing course of discovery, most notably by the December 2009 stipulation, plaintiff agreed that, for purposes of the immediate trial pursuant to CPLR 3212 (c), documents maintained in other clients' files were not relevant to plaintiff's continuous representation claim. If, as plaintiff contends, defendants possessed documents related to Datamine and Amici LLC, nonparties and purportedly nonclients, plaintiff did not demonstrate why these documents

---

[6] According to plaintiff, these documents included a new business memorandum, written documentation of Franklin's advice regarding conflicts, copies of bills rendered to plaintiff or his corporations, records of funds held in an escrow account held on behalf of plaintiff or his corporations, a copy of a retainer agreement related to the alleged Datamine relationship and "written disclosures sufficient to avoid the appearance of impropriety."

were relevant to the continuous representation issue.  Moreover, plaintiff could have subpoenaed these third parties at any time during the pendency of the action, but did not do so.

We recognize that, although plaintiff claims that certain documents should exist, defendants produced more than 5,000 pages of documents during disclosure and have consistently maintained and affirmed that they do not possess any more documents responsive to plaintiff's demands.  In this regard, plaintiff cannot show a clear abuse of discretion because Supreme Court could not compel defendants to produce documents that do not exist (see Mary Imogene Bassett Hosp. v Cannon Design, Inc., 97 AD3d 1030, 1032 [2012]).  On this record, we find that Supreme Court properly exercised its discretion by accepting defendants' affirmation that they had produced all records related to their representation of plaintiff (see Matter of Scaccia, 66 AD3d 1247, 1249-1250 [2009]).

We also perceive no error by Supreme Court with regard to defendants' "lost" emails.  When plaintiff first raised the issue, defendants affirmed that, even if the files could be restored, it would be at great expense.  In March 2011, Supreme Court directed defendants to cooperate with an expert retained by plaintiff to investigate whether emails generated during 2000 and 2001 could be restored and produced.  The court emphasized, without objection from plaintiff, that such investigation was to be done at plaintiff's expense.  After plaintiff failed to conduct the permitted investigation, Supreme Court issued a letter order in June 2011 confirming that the parties would endeavor to find a computer forensics expert to examine the computer, again at plaintiff's expense.[7]  Plaintiff chose not to avail himself of this opportunity, and we cannot conclude that Supreme Court abused its discretion by conducting the hearing without the "lost" emails.

_____

[7]  Although plaintiff had initially represented that he had an expert, it was later learned that he was using information he had obtained from a website and that he never actually spoke with anyone.

We also reject plaintiff's claim that Supreme Court erred by conducting the hearing pursuant to CPLR 3212 (c) and that it should have conducted a trial on the merits of his misappropriation claim.  Supreme Court could not decide the merits of plaintiff's claim until it resolved the statute of limitations issue (53 AD3d at 950).  The record confirms that plaintiff repeatedly acknowledged this, and urged the court to conduct the immediate trial.

Finally, we discern no abuse of discretion in Supreme Court's determination to deny plaintiff's request for an extension of time to serve Duker.  CPLR 306-b provides that, where proper service has not been made on a defendant, a court may extend time for service upon good cause shown or in the interest of justice (see Leader v Maroney, Ponzini & Spencer, 97 NY2d 95,101 [2001]).  Plaintiff alleges that in November 2005, he attempted to serve Duker at the BSF law office, where he believed Duker last worked.  Duker never appeared in the action and plaintiff never sought a default judgment against him.  Given the lengthy, largely unexplained delay, as well as the limited evidence of a meritorious cause of action,[8] Supreme Court's determination to deny plaintiff's motion is fully supported by the record (see Hine v Bambara, 66 AD3d 1192, 1193 [2009]).

Lahtinen, J.P., Rose, Egan Jr. and Clark, JJ., concur.

---

[8]  The relative merit of plaintiff's claims against Duker herein is not established.  In 2009, Supreme Court dismissed a separate, similar action against Duker wherein plaintiff's allegations arose from the same transactions at issue now (Deep v Duker, Sup Ct, Albany County, Mar. 3, 2009, Platkin, J., index No. 7658-08).

-11-                    515948
                       516003

ORDERED that the judgment and order are affirmed, without costs.


ENTER:

Robert D. Mayberger
Clerk of the Court